(No. 10899.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY OSBORNE, Plaintiff in Error.

*Opinion filed April 19, 1917.*

1. CRIMINAL LAW—*when averment in indictment is descriptive merely of the effect of the assault and may be treated as surplusage.* Under the rule that an averment in an indictment may be treated as surplusage and be rejected where it can be stricken out without vitiating the indictment, an averment in an indictment for assault with intent to kill that the defendant shot "into and upon the clothing" of the party assaulted is descriptive merely of the effect of the assault and may be treated as surplusage.

2. SAME—*when testimony of police officers as to nature of complaint as stated in orders given them is not prejudicial.* The testimony of police officers, who, upon complaint made, were ordered to arrest the accused, as to the nature of the complaint stated in the orders given them, is not admissible, but the error in admitting such testimony is not prejudicial, where there is abundant uncontradicted proof in the record establishing the facts upon which the complaint was based.

3. SAME—*extent to which a man may defend his habitation.* A man in his own habitation may resist with force an unlawful, violent entry by one whose purpose is to assault or offer violence to him, even to the extent of taking the aggressor's life, but he is not warranted in taking the life of anyone who may approach his dwelling or trespass upon his premises without any offer of violence.

4. SAME—*extent to which a prosecuting attorney, in his argument, may read statements of facts from reported cases.* A prosecuting attorney, in his argument, may read enough of the ultimate facts of the reported cases he discusses to enable the jury to understand how the law is to be applied to facts of the case on trial.

5. SAME—*what is not a reference to the fact that accused did not testify.* Where the prosecuting attorney, in his opening argument, after stating and illustrating the circumstances testified to, remarks, "And there has been no evidence offered by the defendant—" whereupon, being interrupted by an objection, which was sustained, he withdrew the remark, it cannot be said that his remark was a reference to the fact that the accused did not testify in his own behalf.

6. SAME—*what is necessary to sustain a charge of assault with deadly weapon with intent to kill.* To sustain the charge of an assault with a deadly weapon with intent to commit murder, the proof

must show that the assault was made under such circumstances that had the attempt been successful the killing would have been murder, as a man may intentionally use a deadly weapon in self-defense without the implication of malice, and he may use such weapon in a sudden heat of passion under circumstances that if killing resulted it would be manslaughter.

7. SAME—*when a judgment of conviction will not be reversed.* In the absence of prejudicial errors of law a judgment of conviction which is warranted by the evidence will not be reversed.

8. SAME—*when it is not error to give an instruction omitting the words "beyond a reasonable doubt."* It is not error to give an instruction for the People directing a verdict if certain facts are found to be proved but omitting the words "beyond a reasonable doubt," where the words omitted were used, where necessary, in each of the other instructions given for the People, and where a general instruction was given on behalf of the accused correctly defining the degree of proof required before he could be found guilty.

COOKE, J., dissenting.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding.

SUCHER & MOORE, and SCHOLES & PRATT, for plaintiff in error.

P. J. LUCEY, Attorney General, and C. E. McNEMAR, State's Attorney, (GEORGE A. SHURTLEFF, and CLARENCE D. MURPHY, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error, Harry Osborne, was convicted in the circuit court of Peoria county of an assault with a deadly weapon with intent to kill. The indictment consists of two counts. The first count charges that plaintiff in error "with force and arms in and upon one Daniel Smith, in the peace of the people then and there being, with a certain dangerous weapon, to-wit, with a gun, with which the said Harry Osborne was then and there armed, feloniously, willfully and of his malice aforethought did make an assault, and the said Harry Osborne in and upon clothing, to-wit, coat, of

him, the said Daniel Smith, then and there feloniously and unlawfully did shoot, with intent the said Daniel Smith then and there, with the gun aforesaid, feloniously, willfully and of his malice aforethought to kill and murder." The second count charges that the plaintiff in error "with force and arms in and upon one Daniel Smith, in the peace of the people then and there being, with a certain dangerous weapon, to-wit, with a rifle, with which the said Harry Osborne was then and there armed, feloniously, willfully and of his malice aforethought did make an assault, and the said Harry Osborne at, against, into and upon the clothing of him, the said Daniel Smith, then and there feloniously and unlawfully did shoot, with intent the said Daniel Smith then and there, with the gun aforesaid, feloniously, willfully and of his malice aforethought to kill and murder." ' Motions to quash the indictment and in arrest of judgment were overruled, and these rulings of the court, among others, are assigned as error.

While this indictment could not be used as a model for faultless pleading, its defects are not such as to destroy the sufficiency of the charge against plaintiff in error. It is contended by plaintiff in error that the language in the first count, "and the said Harry Osborne in and upon clothing, to-wit, coat, of him, the said Daniel Smith, then and there feloniously and unlawfully did shoot," and in the second count, "and the said Harry Osborne at, against, into and upon the clothing of him, the said Daniel Smith, then and there feloniously and unlawfully did shoot," is descriptive of the particular manner in which the offense charged was committed, and while it might have been omitted from the indictment, having been thus alleged it becomes an essential ingredient of the charge made. From this premise it is then argued that the indictment does not charge the commission of any offense against plaintiff in error because it does not state where the clothing was, and that if it was not on or about Smith's person no assault could have been committed

upon Smith by shooting the clothing. It is also argued that even if plaintiff in error deliberately shot into the clothing while it was on Smith's person and that was all he was intending to do, that act of itself negatives any intention of assaulting Smith. On the other hand, the People contend that the language last above quoted is mere surplusage and should be rejected.

The indictment will not bear the construction sought to be placed upon it by plaintiff in error. It is quite clear that the language pointed out was not meant to be descriptive of the assault made but was simply intended to describe the effect of the assault. The only reasonable construction which the language used in the two counts of this indictment will bear is that plaintiff in error made a felonious assault upon Smith with a gun or rifle with intent to kill him, and that in making such assault he fired a shot which struck Smith's clothing. The statement in regard to the effect of the assault was unnecessary and under the authorities may be treated as surplusage. An averment in an indictment may be treated, on the trial, as surplusage and be rejected where it can be stricken out without vitiating the indictment. (*Durham* v. *People,* 4 Scam. 172; *People* v. *Boer,* 262 Ill. 152.) The language pointed out in the two counts being merely a statement of the effect of the assault was not necessary, did not become a material averment when made and should be rejected as surplusage. The court did not err in overruling the motions to quash and in arrest of judgment.

Plaintiff in error did not testify on the trial. The testimony of the People tended to prove that the assault occurred at the home of the plaintiff in error, in the city of Peoria, between midnight and two o'clock in the morning of June 24, 1914. Between twelve and one o'clock that morning Mrs. Morrissey, who lived next door to plaintiff in error, was awakened by two gunshots. She went to the door and saw plaintiff in error sitting in a chair on his own porch with a gun in his hands. She asked him if he would

please put up the gun; that her family all worked hard and had to get up early in the morning. He said he would not have anybody tell him what to do and told her how little he thought of her and her family. She then said to him, "Maybe you would like to go to the police station," to which he responded, "Old Mrs. Morrissey is going to have me pinched; have me pinched and I will shoot every damned policeman as fast as they come down; every policeman in Peoria is afraid of me." He then arose and said, "Old Mrs. Morrissey don't like it; well, we will just give her a little more." Mrs. Morrissey did not make any complaint or send any message to the police, but at about this time information was sent by someone to police headquarters of the disturbance plaintiff in error was making. The two policemen on this beat, Smith and Lebin, were flashed a signal and were given this information by telephone. After receiving their orders from headquarters they proceeded in the direction of plaintiff in error's home, when they heard two shots fired. When in the vicinity of his house they heard another shot fired from a point directly across the street from the residence. They searched the barns and sheds from which apparently the shot came, and also plaintiff in error's yard and premises outside the dwelling, but saw no one. The plaintiff in error's wife then came up the street, and at her request the two officers went into the house and helped her take her children from the premises. Just as Mrs. Osborne was leaving the premises the patrol wagon came down the street with other officers and stopped in front of the house. The wagon and these officers had been sent from headquarters as a result of telephone complaints having been made as to the conduct of plaintiff in error. Immediately after these officers alighted from the wagon they heard a noise in the house similar to the clicking of a gun which was being cocked or the clicking of a door-latch. Officers Smith and Lebin, together with officers Roth and Waldron, who had come in the patrol wagon, started

toward the house, with officer Smith leading. Just as Smith was going up the steps he saw the barrel of a rifle sticking out through the door, which was partially open, and a voice inside said, "God damn you, I will kill you." As Smith stepped up on the porch the barrel of the gun was raised. He took one step on the porch, reached up and took hold of the rifle barrel and pushed it to one side. All the witnesses testify that the gun was fired either an instant before or an instant after Smith seized the barrel. The bullet passed through Smith's coat. After the shot was fired the officers rushed into the house, where a scuffle with plaintiff in error ensued. He broke away from the officers and rushed out to the street. As he was running to the street one of the officers shot at him. When he got to the middle of the street he stopped, stating that he was through; that he had shot at one of the officers, one of them had shot at him, and they were square. He was then put in the patrol wagon and taken to the station. After he was placed in the wagon he stated, in the presence of the officer in charge and the driver, that his intention was "to kill the first son-of-a-bitch of a policeman that came on his porch." These are the material facts as shown by the testimony of the People. The only proof offered on behalf of plaintiff in error was the testimony of three witnesses, to the effect that plaintiff in error was drunk on the night in question.

It was not improper to admit the testimony of Mrs. Morrissey relative to the statement of plaintiff in error as to what he would do if an attempt were made to arrest him. This statement was competent and tended to show the intent with which the shot was fired. We do not believe that this language is susceptible of the construction placed upon it by counsel for plaintiff in error. It was clearly a threat to shoot any policeman who might attempt to arrest him, and not a threat that he would shoot every policeman after he had been "pinched" or placed under arrest.

Two of the police officers were permitted to testify, over the objection of plaintiff in error, that they were acting under orders from their superior officers when they proceeded to plaintiff in error's home. They stated what information they had received from their superiors and what the orders were. One of the officers testified that they were told that Harry Osborne was "raising hell and shooting at the corner of Ann and Blaine streets." The other officer testified: "I received orders that Osborne was having trouble with his wife,—that he was shooting up the neighborhood and to go down there and bring him in; after I got there I saw Smith and Lebin; they already had the order." It was proper to show by the police officers that a complaint had been made and they had been ordered by their superior officers to go to Osborne's home, but it was not proper to permit them to testify, as they did, to the nature of the complaint and to the explicit orders given them. While it was error to admit this testimony over the objection of the plaintiff in error, we do not think it was prejudicial or should require a reversal of the judgment. There was abundant uncontradicted proof in the record that plaintiff in error was "shooting up the neighborhood," as that term is generally understood, and his conduct was such that two police officers found it necessary to accompany his wife and conduct her and her two small children from the premises. With proof of these facts in the record it would be apparent to anyone that if any complaint whatever had been made it would be based upon these very facts, and without any intimation from the officers as to what complaints had been made or what orders they had received, it would have been perfectly legitimate for counsel for the People, upon the mere proof that complaint had been made and orders had been given to the officers to proceed to the residence of plaintiff in error, to state that the presence of the officers there was brought about by these acts of plaintiff in error.

The officers had no warrant for the arrest of plaintiff in error, neither had he committed any offense or breach of the peace in the presence of any of them. It is the contention of plaintiff in error that the officers had no right to invade his habitation without a warrant for the purpose of placing him under arrest; that he was in his own house, quiet and in perfect order; that at the time there was no disturbance of any kind on his premises; that when the officers came on his porch he warned them to stop; that they declined to do so and neither disclosed their identity nor made their mission known but continued their advance and forcibly seized him; that under this state of facts he had a legal right not only to oppose the invasion of his home but also to resist arrest. That a man in his own habitation may resist with force an unlawful, violent entry by one whose purpose is to assault or offer violence to him, even to the extent of taking the aggressor's life, is undoubtedly the law, but a man's habitation is not so sacred and his right to defend it so great that he is warranted in taking the life of anyone who may approach his dwelling or trespass upon his premises without any offer of violence. There is no proof in this record that the officers intended or attempted to forcibly enter the dwelling. It is true they entered upon the premises and stepped upon the porch, but not a single act was done that tended to indicate that any violence was to be offered plaintiff in error or that the officers would attempt to enter the dwelling without permission. Plaintiff in error is devoid of any justification whatever in shooting, upon the ground that he was defending his habitation. It is claimed that plaintiff in error warned the policemen to stop and not come upon his premises. There is nothing in the record to justify this. The witnesses who were present all testify that plaintiff in error stated, "God damn you, I will kill you." They further testify that this statement was made almost simultaneously with the discharge of the gun.

Based upon the testimony of officer Smith, who stated upon cross-examination that he did not know whether he seized the gun an instant before or an instant after it was fired and that his pushing upon the gun barrel may have discharged the gun, the claim is made that it is not shown that the gun was deliberately fired but that it may have been accidentally discharged, and that the crime has not been proven with that degree of certainty which the law requires. The testimony of officer Smith was that of a prudent, truthful man. He could not tell with absolute certainty whether the shot had been deliberately fired or whether the gun may have been discharged accidentally, and he frankly admitted that to be the fact. The proof of the statements of plaintiff in error, however, if made while in full possession of his faculties, dissipates all doubt upon this question. He had previously stated to Mrs. Morrissey that he would shoot every policeman as fast as they came up to arrest him. Just an instant before the shot was fired he stated, "God damn you, I will kill you." After he had been seized in the street he made the statement that he had fired one shot at officer Smith and one of the officers had fired a shot at him and they were therefore square. After being placed in the patrol wagon he stated it was his intention to kill the first policeman that came upon his porch. There was no moon on the night in question but the sky was clear, and the officers testified that they could see fairly well. They were able to see the gun barrel and the hand of plaintiff in error through the opening in the door. Each of the officers was dressed in uniform and wore a star. There was nothing to obstruct the view of the plaintiff in error. He undoubtedly knew that the men approaching his dwelling were police officers. Under this state of the proof, unless plaintiff in error was so drunk as not to be able to appreciate what he said and did, there is absolutely no doubt whatever that the shot was intentionally fired.

It is urged that plaintiff in error was prejudiced before the jury by the misconduct of the assistant State's attorney. The first complaint made in this respect is that during his opening argument the assistant State's attorney, in presenting the law to the jury, read the statements of facts from reported cases instead of reading the law. We have examined the abstract in this respect and do not find that the assistant State's attorney did more than to read enough of the ultimate facts of the cases he discussed to enable the jury to understand how the law was to be applied.

During the opening argument the assistant State's attorney, holding the gun used by plaintiff in error on the night in question and after stating and illustrating the circumstances testified to, said: "And there has been no evidence offered by the defendant——." At this point he was interrupted by an objection, which was sustained, and thereupon he withdrew the remark. It is contended that this was a direct reference to the fact that plaintiff in error did not testify. We do not think the remark can be so construed. Testimony was offered on behalf of plaintiff in error which the State's attorney had a right to discuss. While this statement might be construed as an attempt to evade the statute, under the state of the record in this case it cannot be fairly said to be an indication of misconduct on the part of the assistant State's attorney. It would have been a legitimate argument for the State's attorney to make that no evidence had been offered by the defendant sufficient to show that he was incapable of forming the intent charged, and he may have intended making such an argument. We are of the opinion that the statute was not violated and plaintiff in error was not prejudiced by this statement.

The following instruction was given on behalf of the People:

"The court instructs you that the intent of a party committing an act may be inferred from all the facts and circumstances surrounding the commission of such act. A

278 — 8

person is presumed by law to intend the reasonable and probable consequences of his own acts unless some other or different intention is proven."

It is claimed this instruction ignored the defense that plaintiff in error was in such a state of intoxication that he was incapable of forming an intent to commit the crime charged or to comprehend the threats he made. The use of a deadly weapon in making an assault upon another is not necessarily conclusive that the party making the assault intended to commit murder. To sustain the charge of an assault with a deadly weapon with intent to commit murder the proof must show that the assault was made under such circumstances that had the attempt been successful the killing would have been murder. (*Hammond* v. *People,* 199 Ill. 173.) A man may intentionally use a deadly weapon in self-defense without the implication of malice. He may use such weapon in a sudden heat of passion under circumstances that if killing resulted it would be manslaughter. None of these elements, however, were involved in the defense in this case. Proof was offered that plaintiff in error was drunk, and it is insisted if he was so intoxicated as to be incapable of forming an intent to commit the crime with which he was charged he could not be found guilty, and that the instruction complained of denied him that defense. If it be conceded that the court should not have given the instruction, the error, under the state of the record, would not justify a reversal of the judgment. There was some testimony offered by plaintiff in error that he was drunk, but it utterly failed to show that he was in such a state of intoxication as to not know and realize what he was doing or that he was incapable of forming the intent charged. On the contrary, the proof of his condition, acts and declarations, and the testimony of a number of witnesses for the prosecution that he was not drunk, warranted the conclusion that he was not intoxicated to such a degree that he was incapable of forming an intention to commit

the crime with which he was charged. No other verdict than that of guilty would have been warranted by the evidence if the court had refused the instruction complained of and had instructed the jury, as was done in other instructions given both for the prosecution and the defense, that the intent must be proved, beyond all reasonable doubt, as charged in the indictment, and in an instruction given on behalf of plaintiff in error that the jury, in determining the intent, should consider all the facts and circumstances proven, including the testimony as to the condition of his mind with reference to his being intoxicated. In the absence of prejudicial errors of law, a judgment of conviction which is warranted by the evidence will not be reversed.

Other instructions given on behalf of the People directed a verdict of guilty. It is urged that each of these instructions is erroneous in that it excludes a necessary element of plaintiff in error's defense. The only defense which it could be claimed these instructions ignore is that plaintiff in error was in the defense of his habitation at the time he fired the shot. For the reasons we have already given, these instructions are not subject to this criticism.

One of the instructions given on behalf of the People which directed a verdict omitted the words "beyond a reasonable doubt," and told the jury that if they believed, from the evidence, certain facts, they should find plaintiff in error guilty of assault with intent to kill. The words omitted in this instruction were used in each of the other instructions given on behalf of the People where it was necessary to use them, and, in addition, a general instruction was given on behalf of plaintiff in error correctly defining the degree of proof required before he could be found guilty. Under this state of the record it was not error to give the instruction complained of. *Steiner* v. *People,* 187 Ill. 244.

Complaint is made of the action of the court in giving and refusing other instructions. For reasons already given in this opinion the court committed no error in this respect.

Finding no reversible error in the record the judgment of the circuit court is affirmed.     *Judgment affirmed.*

Mr. JUSTICE COOKE, dissenting:

I concur in all that is said in the majority opinion except the discussion and holding in reference to the instruction of the People which is quoted. I am of the opinion that by that instruction the only defense interposed was withdrawn from the consideration of the jury and that the giving of the instruction constituted prejudicial error.