THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER BONEAU, Plaintiff in Error.

*Opinion filed October 22, 1927.*

1. CRIMINAL LAW—*when refusal to grant continuance for absent witness is not error.* Overruling a motion for continuance made for the alleged purpose of procuring the testimony of an absent witness cannot, on review, be regarded as error where the facts set up in the affidavit are immaterial and without weight in determining whether a different verdict would have been reached in the case had the absent witness been present and testified to such facts.

2. SAME—*knowledge that property was stolen may be inferred from circumstances.* In a prosecution for receiving stolen property, knowledge of the defendant that the property was stolen is seldom susceptible of direct proof but may be inferred from all the surrounding facts and circumstances in the transaction, including the acts and declarations of the accused concerning the transaction.

3. SAME—*what necessary to discredit testimony of witness as an ex-convict.* The testimony of a witness cannot be discredited on the ground that he is an ex-penitentiary convict, where there is no proper proof in the record that he was ever convicted of an infamous crime.

4. SAME—*when variance is not material—review.* A variance in a criminal prosecution is not material unless it is of such a substantial character as to mislead the accused in preparing his defense or unless it may place him in a second jeopardy for the same offense, and where the variance does not go to the essence of the crime the question cannot be raised for the first time in the Supreme Court.

5. SAME—*when allegation that particular description of property taken is unknown need not be proved.* In a prosecution for receiving stolen property the People are not required to prove the truth of the allegation that a more particular description of the property is unknown to the grand jurors, but such allegation may be regarded as surplusage where there is a sufficient description of the property in the indictment and a further description would in no way aid the defendant in making his defense.

6. SAME—*when State's attorney may refer to defendant as a "fence" for thieves.* In a prosecution for receiving stolen property,

the State's attorney, in his argument, may refer to the defendant as a "fence" for thieves and explain to the jury that a "fence" is a place where robbers and thieves dispose of their loot, where it is a fair inference from the evidence that the defendant did receive stolen property knowing the same to have been stolen.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

FAULKNER & MOORE, and WM. M. P. SMITH, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JESSE R. BROWN, State's Attorney, MERRILL F. WEHMHOFF, and I. H. STREETER, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The grand jury of Madison county returned an indictment to the circuit court of that county charging plaintiff in error, Walter Boneau, (herein referred to as defendant,) jointly with Earl Dillahan, Dan Purcell and Guy Prather, with the crimes of burglary, larceny and receiving stolen property. Prather and Dillahan pleaded guilty to the indictment. Prather was sentenced to the penitentiary under his plea and Dillahan to the reformatory. Purcell pleaded guilty under another indictment in the city court of the city of Alton and was sentenced to the penitentiary. The defendant was tried under the indictment, and at the conclusion of all the evidence the State's attorney dismissed all counts of the indictment except the second count, which charged the receiving of stolen property. It is alleged in the second count that the stolen property was twenty-five automobile casings, (a more particular description of which was to the grand jurors unknown,) of the value of $300, and thirty automobile inner tubes, (a more particular description of which was to the grand jurors unknown,) of the value of $50, the property of Charles E. Stahl and Ralph Stahl, partners under the firm name of Stahl Store,

which store had been burglarized and the property stolen therefrom. The jury found the defendant guilty of receiving stolen property as charged in the second count, and found the value of the property received to be $90 and his age to be thirty-eight years. Motions for a new trial and in arrest of judgment were overruled and the defendant was sentenced to the penitentiary for an indeterminate term. He has sued out this writ of error to review the record.

Seven witnesses testified for the State. The three defendants who pleaded guilty testified in substance as follows: They drove in a Chandler automobile owned by Guy Prather to Moro, in Madison county, Illinois, to what was shown to be the Stahl store, owned by Charles E. and Ralph Stahl, arriving there about 12:30 A. M. on May 4, 1925. When they got to the store Dan Purcell and Frank Ziegler entered it and stole therefrom about eighteen automobile casings or tires and about two dozen automobile inner tubes. The casings and inner tubes were in the original wrappings in which they were shipped from the factory, the tubes being in small boxes, one in each box. The three defendants and Ziegler then drove from the Stahl store with the tires and tubes straight to the defendant's garage, in Mitchell, in Madison county, by the nearest traveled road in about thirty minutes, arriving there about 1:30 A. M. on May 4, 1925. The garage was locked when they got there and Ziegler went to the defendant's home, about 300 feet from the garage, and brought the defendant. The defendant opened the garage and lighted it with an electric light and Prather drove his car into it. Purcell then told the defendant that they had some tires and inner tubes, and he and the defendant discussed the terms of sale, and Purcell finally sold to the defendant all the casings and inner tubes for $50, according to the testimony of Purcell. The three defendant witnesses testified that all of the eighteen tires and twenty-four inner tubes which they got from the Stahl store were sold to the defendant and left with him,

piled up in the back part of his garage, but Dillahan quali-
fied his testimony on this point with the statement that
Prather said something about wanting one of the tires for
his automobile, but said that he did not know whether or
not he got the tire. These three witnesses also testified
that they were not promised by the State's attorney, or by
anyone, immunity for testifying in the case. They did not
know whose store it was they burglarized on that night,
but they described it as the first store on the left side of
the road "as you drive into Moro from the south." The
other evidence in this record leaves no doubt that the store
they drove to and burglarized was the Stahl store, and
this is not questioned.

About May 15, 1925, Ralph Stahl and two constables
of Madison county, Charles Hawes and Henry Lawrence,
went to the defendant's garage to search it and his prem-
ises under the authority of a search warrant that had been
issued to Hawes. They so testified in this case, and also
further testified that when they arrived at the garage for the
search they found twenty-three inner tubes on the shelves
in the lower part of the defendant's garage and other in-
ner tubes and merchandise. The twenty-three inner tubes
were identified by Stahl as the property of the Stahl store.
He was able to positively identify the property as the prop-
erty of the Stahl store by the private cost and selling prices
of that store written on the packages with a lead pencil.
There were also found up in the loft of the garage, about
nine feet above the lower floor, five of the casings or tires
which had been stolen from the Stahl store and which were
identified by Stahl by the cost and selling prices written on
each package with a lead pencil. One of these tires was an
Oakleaf, 34x34, two of them were Firestones, 30x3, and
the other two were Oldfields, 30x3. The tubes and five
tires were introduced in evidence as the only tires and
tubes stolen from the Stahl store on the date aforesaid that
were recovered by the Stahl store, except one other tire

not described, which Stahl testified he took off of Prather's automobile. Lawrence and Hawes testified that when they went to defendant's place to make a search for the stolen property Hawes asked the defendant if he had any Firestone casings or tires, and he answered that he did not have any Firestone tires. Hawes, Stahl and Harry Ladendorf testified that the defendant climbed up into the loft of the garage where he had some tires or casings, some of which could be seen from the garage floor and some could not be so seen. Hawes testified that while the defendant was in the loft he threw down all the tires that could be seen from below but that he did not throw down any of the five tires that were afterwards found in the loft and identified as the property of the Stahl store. Hawes is corroborated in this last statement by Stahl's testimony. Hawes, Stahl and Ladendorf further testified that Hawes sent a young man by the name of Doerr up into the loft after the defendant had climbed down, and that Doerr threw down the two Firestone tires which the defendant failed to throw down and that Stahl immediately identified them as tires stolen from the Stahl store. Ladendorf did not know what make of tires the defendant threw down when he was up in the loft. Hawes and Stahl testified that Doerr threw down from the loft all the five tires which were identified as the property of the Stahl store and that the defendant threw none of them down when he was in the loft. Lawrence was not there when the tires were thrown down from the loft and did not testify on that question.

In addition to the foregoing testimony of Ralph Stahl he further testified to the following facts: The Stahl store, located in Moro, was owned by himself and his father, Charles E. Stahl, at the time it was burglarized on the morning of May 4, 1925. On May 3—the day before the robbery—they had twenty-five tires and thirty inner tubes, and when they opened the store on the morning of the 4th all the tires were gone and twenty-eight of the in-

ner tubes. The tires were for all sizes of wheels, mostly 30x3 and 30x3½, and the tubes ran the same way as to size. In valuing the casings or tires and tubes stolen, the court ruled that the State had better confine the valuations to eighteen casings and twenty-four tubes that the three burglars and witnesses for the State testified they sold to the defendant. The witness then gave the fair cash value of eighteen of the smallest and cheapest tires that had been stolen from the Stahl store as about $225 and the fair cash market value of the cheapest inner tubes that were stolen as $1.50 per tube. He further testified that the fair cash market value of the five casings and the inner tubes recovered by him from the defendant was about $100, which was the retail price of the tires and tubes, and that the wholesale price for the five casings and twenty-three inner tubes recovered from defendant would be about $80. He further testified that the cost and selling price of the tires and inner tubes were by his firm placed upon the packages in which they were contained, as already stated, and that while some of his prices were partially erased by the defendant or by someone, he was still able to identify on all the packages their cost mark and selling price and the packages as belonging to the Stahl store. Their cost price was indicated by letters of the alphabet. The changes that had apparently been made were the erasure of the selling price and the substitution of another selling price of two dollars on some of the inner tubes and other selling prices for the tires and other tubes that were recovered. On cross-examination Stahl testified that Cecil Stahl owned a small interest in the store, but that the witness and his father, Charles E. Stahl, owned substantially all of the store.

Nine witnesses testified for the defendant. Louis Hessenaur, a resident of Mitchell and yard clerk for the Chicago and Eastern Illinois Railroad Company, testified that he had known the defendant about three years. He was present when some of the tires introduced in evidence were

found in the defendant's garage. The two Oldfield tires and the large Oakleaf tire were thrown down from the loft by the defendant, and that Stahl was not sure at the time the tires were thrown down that they were his. The witness saw those tires thrown down by the defendant and then left. He further stated that when the tires were lying on the floor Stahl came in and identified them, and that when he (the witness) left the garage the defendant had gotten down from the loft over the office.

The defendant testified in his own behalf substantially as follows: That he is thirty-eight years of age and has been engaged in the garage business at Mitchell for the last four years. He has done from $8000 to $10,000 worth of business at his garage since he has been at Mitchell and has done an average yearly tire business amounting to $2000 or $2500. He recalled the incident of buying seven automobile casings or tires and twenty-three inner tubes from Prather, Dillahan, Purcell and Ziegler. They represented themselves as tire salesmen and asked him if he could use any tires, and he asked them, "What have you got?" He talked with Purcell about the terms of sale and paid him $50 for the seven casings and twenty-three tubes. He stated that he sold two of the casings, and that the other five which he bought were the five introduced in evidence. The parties that sold him the tires came to his place in the early part of May, 1925, at about ten o'clock in the evening. He was in the shop, ready to close up, when the four men came in. He did not describe the two casings that he sold. Purcell was dressed fairly well and had the appearance of a salesman. He stated that the fair cash wholesale market value of the tubes for the 30x3½ casings was ninety cents per tube and that he was paying that price for like tubes, and that the larger tubes cost more money. He did not know exactly the wholesale value of the casings at the time he bought them. The Oakleaf is not a high-grade casing and the two Oldfield tires are a cheaper grade. He

classed the Oldfield tires as between the Oakleaf and Fire-
stone in grade and rated the Firestone as a high-grade
tire. He stated that the wholesale price of the seven cas-
ings was about four dollars per casing. Prior to May 3,
1925, he bought tires frequently at his garage directly from
the agents of the manufacturers who carried the tires with
them for sale and delivery; that he knew them to be such
agents and never asked them if the tires were stolen. He
had never known before or dealt with any one of the four
men from whom he bought the tires and tubes in question,
and the three of them who testified corroborated him in
that statement. He further stated that when the officers
and Stahl came to search his garage he went up into the
loft of his garage and threw down the five tires which
were introduced in evidence in the case; that the five tires
were standing up in the loft where they could be plainly
seen from the floor; that he did not know the tires which
he bought were stolen; that he did not change or attempt
to obliterate any marks on the packages containing the tires
and tubes; that he did not know the man named Ziegler,
and that Ziegler did not wake him up at his house on the
night he bought them and bring him down to the garage;
that the four men were at his garage about fifteen or
thirty minutes that night, and that at no time in the trans-
action between him and them was the front door of the
garage closed.

The other seven men who testified for the defendant
only testified as to the defendant's reputation as an hon-
est, law-abiding citizen and as to his truthfulness in the
community in which he resided. They stated that such rep-
utation was good.

The defendant contends that the court committed re-
versible error in denying his motion for a continuance be-
cause of the absence of one Schwarting, a witness living
in St. Louis, Missouri, and who was not able to be at the
trial when the cause was tried. Assuming that the absent

witness would testify to the matters stated in the affidavit for continuance and that the defendant complied with the statute in showing due diligence in securing the attendance of such witness and that his attendance could and would be procured at the next term of court, there was no reversible error committed by the court in overruling the motion. The facts set forth in the affidavit to which the witness would testify are, in substance, that he had been for a number of years an automobile tire salesman and had sold defendant tires of various kinds and quantities during those years; that he had frequently stopped at the defendant's garage at various hours between seven and eleven o'clock at night; that on some of these visits he did not find the defendant at his garage and went to his home for the purpose of making sales to him; that he sometimes carried with him in the tonneau of the Ford sedan in which he rode, automobile tires which he sold and delivered to the defendant on behalf of the factory which he represented; that the tires so sold by him were not stolen tires and were new stock and in their original factory wrappings, and that the fair cash market value of the automobile casings and inner tubes mentioned in the indictment in this case is about $50.

The articles mentioned in the indictment as stolen are twenty-five automobile casings or tires and thirty automobile inner tubes, and their wholesale cost price, according to the testimony of the defendant himself, would be very much over $100, and according to the testimony of Ralph Stahl would be very much over $200. Besides, the proper question for the jury to decide as to the value of these tires is, What was the fair cash market value of the tires purchased by the defendant at the place where they were purchased or received or the cash market value of such articles at Mitchell? The three thieves who testified in the case never assumed to know exactly how many automobile tires and inner tubes they sold to the defendant. They es-

timated them at eighteen tires and two dozen tubes, and they sold the defendant the entire lot for $50, no price being fixed for any one tire or any one tube. They did testify that they sold all of the tires and tubes which they stole from the Stahl store to the defendant, with the possible exception of one tire kept by Prather for his car. Ralph Stahl testified that twenty-five casings and twenty-eight inner tubes were stolen from him. According to the testimony in the record as given by the witnesses, the purported testimony of the absent witness would have no tendency to change the verdict of the jury to a verdict of not guilty. Neither manufacturers nor wholesale merchants are accustomed to send as many as four representatives together to sell a bill of tires and tubes. Their representatives do not usually sell tires and tubes in bulk, at a certain price for the whole number sold, but ordinarily fix a definite price per piece or per dozen for the article sold. It is very unusual for them to make sales and deliveries at 1:30 A. M. Every circumstance connected with the sale of the tires and tubes to the defendant by the four thieves would suggest to an ordinary person of intelligence that the property so offered for sale and sold by them was stolen property. It was sold at a grossly inadequate price and in bulk, at an unusual hour, and by strangers to the defendant, and no inquiry whatever was made by the defendant as to how they obtained the property. The facts set up in the affidavit were immaterial and without weight when considered for the purpose of determining whether or not a different verdict would have been reached in the case had the absent witness been present and had testified to such facts, and the defendant was not prejudiced by the overruling of the motion for continuance. *Cobb Chocolate Co.* v. *Knudson,* 207 Ill. 452; *Grundies* v. *Bliss,* 86 id. 132.

The defendant's contention that the evidence does not support the verdict cannot be sustained. The two main facts that are required to be proved beyond a reasonable

doubt to sustain the charge of receiving stolen property are, (1) that the property so received was stolen property, and (2) that the defendant received the property knowing the same to have been stolen and with intent to hinder or prevent the rightful owner from again possessing the property. There is no dispute in the case that the property found in the defendant's garage was stolen from the Stahl store and was sold and delivered to the defendant by the thieves. Such knowledge within the mind of the defendant is seldom susceptible of direct proof and may be inferred from all the surrounding facts and circumstances involved in the transaction, including the acts and declarations of the accused concerning such transaction. (*People* v. *Grove,* 284 Ill. 429.) The defendant is contradicted by the three indicted witnesses who stole the property in almost every material fact testified to by him and them. He is not supported by his own witness in his testimony that he threw down the Firestone tires for the inspection of Stahl and the other parties searching for the property stolen. He is contradicted by Stahl and the other three witnesses for the State who were searching for the property as to the facts that he denied having in his possession Firestone tires and that he sought to conceal them or to prevent the searchers from finding them. The jury were warranted from all the evidence in finding him guilty as charged in the indictment, and this court would not be warranted in setting aside their verdict.

It is argued, in substance, by the defendant's counsel that the witness Hawes is an ex-penitentiary convict. There is no proper proof in this record that he was ever convicted of an infamous crime, and under the authority of *Bartholomew* v. *People,* 104 Ill. 601, that question was not properly presented either for the consideration of the jury or of this court.

There is no fatal variance because of the fact the property stolen or received by the defendant was charged by

the indictment to be the property of Charles E. Stahl and Ralph Stahl while the proof showed that Cecil Stahl also owned a small interest in the property. A variance, in criminal law, is not now regarded as material unless it is of such a substantial character as to mislead the accused in preparing his defense or unless it may place him in a second jeopardy for the same offense. (*People* v. *Fox,* 269 Ill. 300; *Clark* v. *People,* 224 id. 554.) No such variance exists in this case. That the property was stolen from the Stahl store, which was definitely located, is not disputed. Besides, the objection that there was a variance is raised for the first time in this court, and this cannot be permitted in this case as the variance does not go to the essence of the crime. *People* v. *Weisman,* 296 Ill. 156; *People* v. *Shaw,* 300 id. 451; *People* v. *Cunningham,* 300 id. 376.

The defendant also contends that the allegations in the indictment that a more particular description of the property was to the grand jury unknown was not proved but that the proof shows a more particular description of the property was given to the grand jury by the witnesses who testified before it, and that under the ruling of this court in *People* v. *Hunt,* 251 Ill. 446, the indictment is not sufficient to sustain the verdict and judgment. In that case the indictment charged the larceny of money of the government, a more particular description of which was unknown to the grand jurors. The prosecuting witness testified that he described to the grand jury the money as being five ten-dollar bills and a five-dollar bill. At common law an indictment that merely describes the subject of larceny as a certain number of dollars of lawful money of the government of a stated value is too indefinite and uncertain and under that law should be quashed. In the foregoing case this court followed that rule, and there stated that where matters which ought to be stated in the indictment are omitted and the excuse is stated that such facts were unknown

to the grand jurors, the truthfulness of the excuse given is put in issue by the plea of not guilty and the burden is put on the State to prove such allegation. The rule is otherwise where the description of the property stolen as given in the indictment is a sufficient description of the property. In such case the allegation that a more particular description of the property is unknown to the grand jury may be treated as surplusage and is not required to be proved by the People. (*Durham* v. *People,* 4 Scam. 172; *People* v. *Osborne,* 278 Ill. 104; *People* v. *Paisley,* 288 id. 310.) The description or character of the property received by the defendant was not an issue on the trial. The tires and tubes found in his possession were introduced in evidence and Stahl identified them as the property of the Stahl store. The defendant admitted that he received from the thieves the tires and tubes which were introduced in evidence, and there was no dispute as to their description or identity. Besides, they were sufficiently described in the indictment, and a further description of them would in no way have aided the defendant in making his defense.

In his closing argument to the jury the State's attorney referred to the defendant as a "fence for thieves," and told the jury that a "fence" was a place where robbers and thieves disposed of their loot. The word "fence" is a colloquial expression used to designate a person who receives stolen goods from the persons who steal them. It was a fair inference from the evidence that defendant was a "fence" or a receiver of stolen property knowing the same to have been stolen, and the State's attorney did not exceed the limits of proper argument in so denouncing the defendant, and the latter has no just complaint that he was prejudiced thereby.

There was other evidence in the record that the defendant was guilty of receiving stolen property as charged in the indictment aside from the evidence of the three confessed burglars. The argument of the defendant that these

confessed accomplices should not be relied upon to sustain the conviction is without merit.

The seventh and eighth instructions given for the People are somewhat faulty, as contended by the defendant, but it cannot reasonably be said that the giving of them prejudiced the defendant.

There is no reversible error in the record, and the judgment of the circuit court is affirmed.

*Judgment affirmed.*