**W. S. (Bill) _MINTON_, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43526.**

Court of Criminal Appeals of Texas.

May 26, 1971.

Rehearing Denied July 14, 1971.

Bradley C. Miles and Oliver H. Otto, San Angelo, for appellant.

Royal Hart, Dist. Atty., San Angelo, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for receiving stolen property over the value of $50. Trial was before a jury and the court assessed the punishment at two years.

Appellant's first ground of error is in regard to argument made to the jury by the prosecutor.

Mrs. Merle Baldwin testified that her 25-inch Curtis Mathes color television set was stolen from her home in San Angelo on March 14, 1969. She identified State's Exhibit No. 1 as a photograph of her television set.

Aubrey Long, who was 21 and admitted having frequently been in trouble with the police, was indicted for the offense of burglary of a private residence at night for the burglary of Mrs. Baldwin's house and was granted immunity to testify in this case. He testified that he took the television set from Mrs. Baldwin's house in March of 1969. That the appellant offered to buy the television from him and went to look at it at Juan Delarosa's house. He further testified that, "He said he knew it was hot; he already heard about it; he already heard about it on the radio, and for me not to go and tell anybody." After inspecting the television, the appellant told him he would give him $125 for it. Long further testified that, "He told me if I got anything hot to come to him; don't tell anybody else about it, and he would see if he could buy it" and that "Bill and Juan Delarosa drove off in a pickup with it."

On cross-examination, he testified that he and Doyle V. O'Neal stole the television and that he had known the appellant for several years.

Juan Delarosa was acquainted with both Long and O'Neal. He testified that on March 10, he saw the television at Long's house and that Long asked him if he wanted to buy it. They then went to "Bill Minton's Drive-In" where Long and the appellant had a conversation which Delarosa testified he could not hear. Later that day Minton and Long both came to his house, and Minton took possession of the television. He testified that Minton asked him if it was working. Further, he testified he did not know it was stolen, and that he did not think the appellant knew it was stolen.

Minton and Delarosa took the television set to the Schlitz warehouse. A woman, who Delarosa identified as Mrs. Helen Bishop, came out to look at it. They then

delivered the set to Mrs. Bishop's house. Mrs. Bishop asked Delarosa if the television set worked and he replied, "Yes, mam, it does, because I saw it working this morning."

Doyle O'Neal testified that he and Long stole the television and took it to Long's house. Shortly thereafter, he and Long and the appellant discussed the television. Long told the appellant that the set was "hot," meaning stolen. He did not hear most of the conversation. He further testified that about an hour later the appellant met him again at Long's house and gave him $125 in cash. He also testified that he and Long had told Delarosa the set was "hot," that Delarosa knew it was stolen, and that he, Long, and Delarosa all went together to see the appellant.

O'Neal was not indicted, but did receive immunity to testify in this case.

Helen Bishop was employed at the R. M. Minton Schlitz Distributorship, which was owned by the appellant's father. She testified that the appellant told her he had a television set he wanted her to look at and she identified State's Exhibit No. 1 as a photograph of the television set he showed her. She gave her house key to the appellant and he and Delarosa put it in her house. It was in her home when she returned from work that day.

Ernest Haynes, a detective sergeant in the San Angelo Police Department, found the television in Mrs. Bishop's home. Haynes then went to talk with the appellant at his place of business, Minton's Drive-In. At that time, there was no warrant for the appellant's arrest and the officers did not consider him under arrest or tell him he was under arrest, and the appellant was free to leave at any time. He testified that he told the appellant that they were investigating the theft of a television set from Mrs. Baldwin's home and that they only wanted to know where the appellant had obtained the set. (At that time, the appellant himself was not under investigation. They believed he might have bought the set without knowing it was stolen. Therefore, they did not advise him of any rights.) He also testified, in part, as follows:

"Q Do you recall how you approached the subject?

"A Yes, sir. I plainly stated to Mr. Minton that we picked up the set and we were down there to obtain information how he come in possession of it; we had information that he did, that he was in the process of selling it to Helen Bishop.

"Q What was his response?

"A He said he had bought it from a Latin American subject from Sonora, Texas.

* * * * * *

"A He showed me a bill of sale, hand written.

* * * * * *

"Q Can you positively identify State's Exhibit No. 4 as being the paper that the Defendant handed to you on that occasion?

"A Yes, sir, it is."

They later returned for a second conference at which time the appellant was still not under arrest, but was free to leave at any time. Regarding this second conversation, Haynes gave the following testimony outside the presence of the jury:

"A Well, the best I remember, I can't remember the exact words, I advised Bill we had information and believed he did not receive this set from this Latin American subject from Sonora—

"Q What did he say when confronted with that?

"A Well, he hedged some; later admitted he didn't buy it from a Latin American subject from Sonora."

Haynes further testified that he was present in the grand jury room along with

other witnesses, assisting the district attorney in coordinating the witnesses' statements. At that time, the appellant moved to quash the indictment because of Haynes' presence in the grand jury room. The court overruled the motion.

Several witnesses testified that the appellant had a good reputation for truth and veracity in the community.

The appellant had operated a drive-in grocery, and pawn broking business for nine years. He testified that on March 10, 1969, Long and O'Neal came to his business and asked if he would make a loan on a color television, and he told them he would loan $50 on it. Later, they returned with Juan Delarosa and described the television, and he told them he might loan as much as $250 on it. About 3 p. m., they called him and told him the television was at Juan Delarosa's house. He went to look at it. He told them he wanted to show it to a lady and that if she wanted it, he would buy it. They then went to see Helen Bishop. Later, he paid O'Neal $250 for the set, not knowing it was stolen. He explained the bill of sale as follows:

"Q    State when you made that bill of sale out.

"A    When I left my dad's office and drove over at my little store, I got a checkbook out of the drawer and made the bill of sale out and put it in my pocket.

"Q    Why did you make it out?

"A    I knew if Aubrey picked up the TV they going to be over and talk to me about it, and I felt like something wasn't going right, that there was, well, a Nigger in the woodpile somewhere; and so I made that bill of sale to try to calm things so I could get back to Aubrey Long and get my money back on this TV. I was stalling for time. I wanted to get my money back."

And on cross-examination:

"Q    You knew at that time what you handed him was a bald-faced lie?

"A    Yes, sir. I was stalling. I wanted to find out what was going on. I wanted to get my money back.

"Q    How would lying about it help stall it?

"A    Well, I made a mistake there; I certainly did."

He also testified that he was 39 years old and had been a businessman all of his adult life.

Doyle O'Neal took the stand again and testified that the appellant gave him only about $125, but that he was not sure of the exact amount.

In his final argument to the jury, the prosecutor made the following remarks:

"* * * The first duty of the prosecutor is to see that justice is done, to see that these punk kids are rehabilitated and made good citizens of. If granting Long immunity, if that had given him a break and straightens him up, I am glad he got it; whether the State could prove a case or not. If it doesn't straighten him up, you think some jury will get him down the line, think some jury will get him down the line? But a fence, a fence in the community, he encourages and he is the incentive for every young kid in the country to bring him hot stuff.

"MR. MILES: Just a second, Mr. Hart. There is no testimony in this Court Room that his man is a fence for stolen goods. That is the first I have heard of that, when he said that, and I ask that be stricken from the record and the Jury instructed not to consider it. There is no testimony, the whole record in the case is entirely silent on that. That is new, unsworn testimony to this Jury under argument.

"COURT: I am going to overrule.

"MR. MILES: Please note an exception, Your Honor, and at this time we ask for a mistrial.

"COURT: You ask for what?

"MR. MILES: A mistrial.

"COURT: Deny it.

"MR. MILES: Exception."

■ The term "fence" is a colloquial expression used to designate persons who receive stolen goods from persons who steal them. People v. Boneau, 327 Ill. 194, 158 N.E. 431; People v. Fishel, 270 Mich. 82, 258 N.W. 217; Poff v. State, 3 Md. App. 289, 239 A.2d 121.

The appellant cites several cases where this Court reversed because the prosecutor either (1) referred to another crime the appellant allegedly committed, (2) told the jury that the appellant habitually violated the law, or (3) directly called the appellant a "thug, a thief, and a vagrant," or some other term which implied he was dishonest or untrustworthy.

■ This case, however, presents an entirely different type of argument. At no time was the appellant directly called a "fence." The purpose of this argument appears to be to explain to the jury why the "fence" was prosecuted and not the burglars themselves. It explains why they chose to prosecute only for this offense. Further, it is in answer to the argument made by appellant's counsel to-wit:

"And the D. A. with his pack of thieves would come in here and says, 'Believe the burglar but not the receiver; believe the person who would buy the fruits,' —if he did—but turn loose, let go the man who broke in your home;' "

Appellant's first ground of error is overruled.

■ Appellant's second ground of error challenges the admissibility of statements made by the appellant to detectives before the statutory warnings were given. The appellant's contention that this information was given at an accusatory stage in the investigation is without merit. The court allowed Haynes to testify only to the first visit, which took place "within a matter of an hour or so" after Haynes "had found the set at Helen Bishop's home." Haynes' testimony was that he merely asked the appellant where he obtained the television. His testimony reflects that at that time he was not concentrating the investigation on the appellant. Appellant's liberty was not restrained, and he was not placed under arrest until a later date. There was no necessity for the warnings.

Appellant's second ground of error is overruled.

■ The appellant's third ground of error is that the testimony of the accomplice witnesses was not sufficiently corroborated by other evidence.

Art. 38.14 of the Vernon's Ann.Code of Criminal Procedure provides that: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

"The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not." Edwards v. State, Tex.Cr.App., 427 S.W.2d 629.

"The law forbidding a conviction upon the uncorroborated testimony of an accomplice does not demand that there be direct evidence pointing to the accused as the offender, but merely requires that there be 'other evidence tending to connect the

defendant with offense committted.' * * * Circumstances proved by credible witnesses may be as potent as direct testimony in tending to connect the accused with the commission of the offense." Minor v. State, 108 Tex.Cr.R. 1, 299 S.W. 422.

The appellant was charged with the offense of receiving stolen property under Art. 1430 of the Vernon's Ann.Penal Code which provides that, "Whoever shall receive or conceal property which has been acquired by another in such manner as that the acquisition comes within the meaning of the term theft, *knowing the same to have been so acquired,* shall be punished in the same manner as if he had stolen the property." (Emphasis added)

It is not disputed that the appellant received the television and took it into his possession. The only point in controversy was whether the appellant knew it was stolen.

"It is essential in a prosecution for receiving and concealing stolen property that the thief must be corroborated both as to the theft and the receiving and concealing by the accused from the thief, with knowledge that the property was stolen." Hall v. State, Tex.Cr.App., 373 S.W.2d 252. In Hall, as in this case, it was established that the appellant had the missing merchandise in his possession. However, there was no evidence to corroborate accomplice testimony that the appellant knew the merchandise was stolen, and this Court found the evidence to be insufficient.

Since the only real question in this case is whether the appellant knew that the television set was stolen, the question presented in this ground of error is: Was there evidence, other than accomplice testimony, that the appellant knew the television set was stolen?

The State's two accomplice witnesses as a matter of law, Long and O'Neal, fully implicated the appellant.

Juan Delarosa testified that he did not know that the property was stolen and O'Neal testified that he did know it was stolen. There was, therefore, a fact issue as to whether Delarosa was an accomplice witness.

However, Delarosa testified that he did not know the property was stolen and did not know whether the appellant knew it was stolen. And he told the detectives that the appellant did not know it was stolen. Although there is a fact issue as to whether he was an accomplice witness, his testimony, in fact, provides no corroboration to the testimony that the appellant knew the television was stolen.

"The mere fact that one is found in the possession of property which has recently been stolen is not sufficient to show guilty knowledge on his part that it had been acquired by theft." Hochman v. State, 146 Tex.Cr.R. 23, 170 S.W.2d 756. The rule is to exclude the testimony of the accomplices and see if there remain other facts or circumstances which tend to connect the accused with the offense charged. Hochman v. State, supra.

For corroboration, we must look to the statements made by the appellant to Haynes the first time he visited him at the store, which was the only visit admitted into evidence. The appellant told Haynes that he had bought the television from a "Latin American subject from Sonora" and gave him a false bill of sale. The appellant admitted on the stand that he lied about how he came into possession of the television and testified that he wrote up the bill of sale when he learned that the officers were investigating the television. The appellant's words and conduct on the first visit of the police show facts and circumstances which connect the appellant with the crime. Even had the accomplice not testified, the evidence would have been sufficient to convict. Thus, there is evidence to corroborate the testimony of the accomplices.

Appellant's third ground of error is overruled.

 Appellant's fourth ground of error is that there were unauthorized persons in the grand jury room.

In the hearing on the motion for new trial, evidence on that question was presented before the court.

Officer Haynes testified that he testified before the grand jury in this case. He took the oath as a witness to keep secret the proceedings of the grand jury. He also stayed in the grand jury room and heard the testimony of other witnesses that appeared before the grand jury. His function was to "coordinate the testimony of the witnesses." On occasion, other detectives were also present.

Fred Ball, the grand jury foreman, testified in part as follows:

"Q  Mr. Ball, while you served as foreman of the Grand Jury, were any officers, witnesses, or myself, appearing in the Grand Jury Room while your Grand Jury was deliberating and voting on what should be done with the cases?

"A  No, sir.

"Q  Only the members of the Grand Jury were present during that portion of the meeting, is that right?

"A  That's right."

Thus, it appears that while Haynes and possibly other detectives were present in the grand jury room while testimony was being heard, they were not present while the grand jury was deliberating upon the finding of the indictment.

 The Texas rule is that "when the jurors are not deliberating or voting the presence of persons who have official business in the jury chamber, such as police officers or stenographers, is not discountenanced." 27 Tex.Jur.2d 261, Sec. 44. See: Lopez v. State, 158 Tex.Cr.R. 16, 252 S.W.2d 701; Tinker v. State, 95 Tex. Cr.R. 143, 253 S.W. 531.

However, better practice would dictate that only the prosecutor, reporter, if any, and such witnesses that are testifying be present.

Appellant's fourth ground of error is overruled.

There being no reversible error, the judgment is affirmed.