Van Douglas **BALDWIN**, Appellant,

v.

The STATE of Texas, Appellee.

No. 44556.

Court of Criminal Appeals of Texas.

March 8, 1972.

Rehearing Denied April 26, 1972.

Bradley C. Miles, San Angelo, for appellant.

Royal Hart, Dist. Atty., San Angelo, Texas and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Justice.

This appeal is from a conviction for the offense of unlawful sale of a narcotic drug, to-wit: heroin. Punishment was assessed by a jury at ten years.

The sufficiency of the evidence is not challenged. Four grounds of error are submitted, the first alleges that the trial court erred by not granting the motion to quash the indictment. This contention is based on the ground that there were unauthorized persons with the grand jury while testimony was being heard "to persuade the grand jury to return said indictment."

Testimony at a pre-trial motion developed that Odell Wagner, a Captain with the San Angelo Police Department, appeared before the grand jury and heard witnesses testify to matters that resulted in a true bill of appellant. One of the witnesses Captain Wagner heard was Eddie Brown, the person to whom appellant made the sale of heroin. Also, Sergeant Ernest Haynes, who had no official capacity to be there, was present and heard witnesses testify in this cause. Neither was present while the grand jury was deliberating or voting.

We were confronted with this same contention in Minton v. State, 468 S.W.2d 426, wherein the court, at page 432, stated:

"The Texas rule is that 'when the jurors are not deliberating or voting the presence of persons who have official business in the jury chamber, such as police officers or stenographers, is not discountenanced.' 27 Tex.Jur.2d 261, Sec. 44. See: Lopez v. State, 158 Tex. Cr.R. 16, 252 S.W.2d 701; Tinker v. State, 95 Tex.Cr.R. 143, 253 S.W. 531.

"However, better practice would dictate that only the prosecutor, reporter, if any, and such witnesses that are testifying be present."

The indictment in the case at bar was returned prior to our decision in Minton. Therefore, the State did not have the benefit of our suggestions therein.[1] This case is somewhat unlike Minton. There is no indication that the officers in the instant case were "coordinating" the witnesses' testimony as they were allegedly doing in Minton. However, no reversible error is shown.

The first ground of error is overruled.

■ The second ground of error is that the trial judge should have disqualified himself since he viewed an offense report prior to arraignment and in the absence of appellant or his counsel.

The record reflects that appellant filed a pre-trial motion for discovery in which he requested, among other things, "any law enforcement reports." Also, the same request was made by Corby Cooksey who was indicted in this same indictment with appellant for the same offense. The state's attorney delivered said report to the judge in the presence of counsel for Cooksey so the court might examine the same to determine what portions were not discoverable. The court did examine the report and ruled that it be furnished to both attorneys except a portion thereof which did not relate to the case and which contained nothing about the appellant or Cooksey. On July 15, 1970, the court overruled a motion to disqualify himself, with a notation that the viewing of the report had in no way created prejudice to the appellant.

The case was set for trial on Monday, August 17, 1970. On Friday, August 14, 1970, appellant filed a petition for removal to Federal Court on the grounds that he had been prejudiced by the court viewing the report and prayed that the Federal Court hear the case.[2]

We hold that it is not error for the court to inspect "designated documents, papers, written statement of the defendant," etc., so that he may rule on motions for discovery. In fact, it is necessary that he do so in order to make a ruling as to whether such is the work product of counsel in the case and their investigators which is not discoverable under Article 39.14, Vernon's Ann.C.C.P. Clearly, the trial judge is not disqualified for making such inspection prior to ruling.[3]

Ground of error number two is overruled.

■ Ground of error number three asserts that the court erred in not granting the defendant's motion to quash the indictment because he was not afforded a speedy trial.

The record reflects that the offense was committed on September 10, 1969; the in-

1. We note that the trial judge in this case was critical of such procedure and we trust that it has been discontinued.

2. It is noted that the Federal Judge was requested to inspect the report prior to trying the case.

3. To hold that such action would disqualify the trial judge would be tantamount to vitiating a useful and recommended procedural rule. See American Bar Association Project on Standards for Criminal Justice—Standards Relating to "Discovery and Procedure Before Trial."

dictment was filed April 3, 1970; and the trial commenced on September 21, 1970. The first pre-trial hearing in the cause was conducted on July 15, 1970, and there were approximately ten other pre-trial hearings conducted between that date and the date the trial commenced. Appellant's motion to dismiss because he was not afforded a speedy trial was filed on September 8, 1970.

While the record does not disclose why the delay from the date of the commission of the offense until an indictment was returned, we fail to find where the appellant was unduly harmed or prejudiced thereby. See United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Further, the right to a speedy trial usually attaches from the time an indictment is presented and under the facts of this case we see no unusual delay. See Courtney v. State, Tex.Cr.App., 472 S.W.2d 151, and cases cited therein.

*Ground of error number three is overruled.*

■ Finally, ground of error number four asserts "the Court erred in not requiring the State's main witness, Eddie Brown, to give his residence address."

At a pre-trial hearing this witness' address was furnished as: 1114 Commerce, c/o Bureau of Narcotics and Dangerous Drugs, Dallas, Texas, 75202. The name of his supervisor was also furnished. His residence address was not furnished other than that he resided in Dallas.

The following is taken from the record during the trial:

"Q. (By Mr. Miles, Defense Counsel) Where do you live?

"A. Dallas, Texas.

"Q. What is your address?

"A. 1114 Commerce.

"Q. Is that your business address?

"A. Correct.

"Q. Where is your home located?

"A. I don't plan to give it to you.

"MR. HART (Prosecutor): We object to that, being immaterial here. He is, of course, in some danger as an undercover narcotics agent, and unless some relevancy is shown we see no purpose that could be served in asking him to reveal his home address.

"MR. MILES: I would like to know about this man.

"THE COURT: What did you say?

"MR MILES: I want to know about this man, where he lives, what address; we are entitled to know where he lives.

"THE COURT: I will allow you to inquire as to the city in which he resides.

"Q. He doesn't have any street address or residence address?

"A. No, sir.

"Q. You do live in Dallas, Texas?

"A. Correct."

First no particularized need was developed for the disclosure of the residence address of this witness. Second, no objection was made to the court's ruling and therefore no error is preserved.

Ground of error number four is overruled.

There being no reversible error, the judgment is affirmed.