O. W. ANDERSON v. THE STATE.

No. 7188.   Decided February 28, 1923.

Rehearing granted October 10, 1923.

**1.—Robbery—Bystander's Bill—Practice in Trial Court.**

The statute contemplates that the party desiring a bill of exceptions shall prepare the bill and present it to the judge and counsel for approval, and if the judge does not aprove it he is required to prepare his own bill in accord with the facts, and if the bill prepared by him is unsatisfactory to the party complaining he may controvert it by a bystander's bill; but it must appear that a bill prepared by the complaining party has been presented to the judge.

**2.—Same—Bill of Exceptions—Affidavit.**

The averment that appellant prepared and presented his bill of exceptions, and that the trial court refused to take any action upon it, must be supported by the oath of the party, an unsworn statement attached thereto is not sufficient.

### 3.—Same—Bills of Exception—Practice on Appeal.

Bills of exception filed after the expiration of the time allowed by the trial judge for filing cannot be considered on appeal. Following Bargas v. State, 86 Texas Crim. Rep., 231.

### 4.—Same—Requested Charges—Motion for New Trial—Practice on Appeal.

In the absence of authenticated exceptions to either the court's main charge or to the refusal of the requested charges filed in due time, the same cannot be considered on appeal. Neither will the motion for a new trial operate as a substitute for a bill of exceptions to the ruling of the court in the admission or rejection of evidence.

### 5.—Same—Rehearing—Bills of Exception—Practice on Appeal.

Where, upon motion for rehearing, it appeared that there had been an extension of time for filing certain bills of exception, which the clerk had neglected to embrace in the record, a review of the record becomes necessary. However, only one question of moment is presented, which is the court's charge on accomplice testimony.

### 6.—Same—Accomplice—Corroboration—Charge of Court.

Where, upon trial of robbery, the form of the court's charge on accomplice's testimony was misleading, and the special charge requested would have informed the jury that in order to justify a conviction it was essential that they believe that the accomplice's testimony is true, and that it showed beyond a reasonable doubt that the accused is guilty of the offense charged, which in the instant case was material, the same was reversible error. Following Brown v. State, 57 Texas Crim. Rep., 509. Qualifying Campbell v. State, 57 Texas Crim. Rep., 302.

### 7.—Same—Accomplice's Testimony—Corroboration—Rule Stated.

Where the testimony of the accomplice is not conclusive to that degree that the jury finding it to be true would necessarily convict; nor is the testimony, excluding that of the accomplice, of a character so conclusive as to dispense with the necessity of a declaration 'in the charge of the court that the conviction must rest not alone upon the fact that the jury believe that the accomplice told the truth, but beyond a reasonable doubt that defendant committed the offense, the requested charge should have been given, and the failure to do so is reversible error.

Appeal from the District Court of Jefferson. Tried below before the Honorable E. A. McDowell.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Howth & O'Fiel* for appellant. On question of presenting bills of exception, etc., Railway v. Grain Co., 114 id., 436; Railway v. Vick, 210 id., 249.

On question of evidence of co-conspirator, Walker v. State, 140 S. W. Rep., 455;; Anderson v. State, 140 id., 457; Moslin v. State, 144 id., 990; DeLeon v. State, 155 id., 248.

*R. G. Storey*, Assistant Attorney General, for the State. On question of charge on accomplice's testimony, Watson v. State, 90 Texas Crim. Rep., 576.

MORROW, Presidinr Judge.—The conviction is for robbery; punishment fixed at confinement in the penitentiary for a period of five years.

The indictment is joint against L. J. Mouhart and O. W. Anderson. The subject of the robbery is B. P. Randall.

Mouhart, an accomplice, testified in behalf of the State. From his testimony, it appears in substance that he and appellant were friends; that Randall had loaned thirty dollars to the appellant and came to his home and collected it. While there, the witness, at the request of Randall, procured some whisky, the drinking of which was indulged in by the witness Mouhart, Randall, the appellant and his wife. Randall became intoxicated and Anderson and Mouhart undertook to take him home in an automobile. On the way Randall became quarrelsome and wanted to get out of the car. Anderson opened the door and pushed Randall out. After moving a short distance, the car was stopped and Anderson got out and went to the place where Randall had fallen. The car was proceeding without lights. After returning from his visit to Randall, Anderson drove the car back to his home, Mouhart accompanying him, but protesting against leaving Randall on the road. Anderson and Mouhart retired in appellant's home, both occupying the same bed. They were arrested about one o'clock at night; Mouhart was arrested between that time and daylight, and appellant was arrested later. Mouhart claimed to have known nothing of the loss of the diamond until after his arrest. From the police station, in company with a police officer, Mouhart returned to the home of appellant. Mouhart had a conversation with Mrs. Anderson and thereafter told the officer where he could find the diamond. From other testimony, it appeared that the officer found the diamond in accord with the information given by Mouhart.

From Randall's testimony it appears that he believed that he was drugged and stated circumstances tending to show this fact. The room was warm, and on starting out, he fell down and lost consciousness. When he regained consciousness, he was on the ground but out of the automobile, and while there Anderson struck him on the head several blows, felling him, and taking away his diamond, which was pinned in his tie. A flashlight was used. When Randall recovered himself, he went to a business house, where he saw a light, and from there he was taken to the police station where he related his troubles to the police officer Parsley. The diamond was forced out of the setting and the pin left in the tie.

According to the testimony of Parsley, he obtained Anderson's address from Randall and went to Anderson's home about two o'clock in the night and arrested Mouhart. Anderson was arrested later. After Anderson's arrest, the witness, in company with Mouhart, went to the home of Anderson, where Mouhart had a conversation with Mrs. Anderson and thereafter told the officer that the diamond could be found in a fern pot setting on the back porch at Anderson's home; that in consequence of this information, the officer found the diamond while Mouhart was present, and it was afterwards identified and produced upon the trial.

Anderson's testimony was to the effect that while the parties were drinking whisky at his house, he had gone off on an errand; that finding Randall drunk, he persuaded him to go home in appellant's automobile with the appellant; that he got Randall in the car and discovered on the way that Mouhart was in the back part of the car. Randall became unruly and jumped out before the car came to a stop. Mouhart went back to where Randall fell. The lights were out and the appellant was trying to repair them. Upon his return, Mouhart suggested that they leave Randall in the road. This was done over appellant's protest. Appellant disclaimed striking Randall or getting the diamond.

From appellant's cross-examination, it appears that Mouhart told him that he had struck Randall four times; that he learned that Mouhart had a diamond; that Mouhart showed a diamond to him, though he did not know that it belonged to Randall, and that he did not know where the diamond was at the time of his arrest. After this conversation they went to appellant's home together, and went to bed; that Mouhart told him that he intended to take the pin to Houston and "soak" it. He also testified that his wife told him that Mouhart had had a conversation with her after the arrest and that he had told her to throw away the fern pot which was on the back porch, but that she declined to do so.

Mrs. Anderson corroborated the appellant in this statement and testified that she had no knowledge as to the whereabouts of the diamond; that she heard Mouhart say to her husband: "I hit the old son-of-a-gun, and this is what I got;" that he had something in his mouth; that he said it was a pin, and her husband told him that "he had played the devil;" that Mouhart showed her the diamond before the arrest; that he had it between his teeth. This was in the presence of her husband.

Copied in the record are documents denominated bills of exceptions. A number of these bear no authentication by the trial judge; his signature does not appear in connection with them. In lieu of them is a statement signed by one of the attorneys for the appellant which recites that the "foregoing bill of exceptions was presented dur-

ing the term of court to the trial judge and the counsel for the State; that the trial judge refused to approve the bill or to prepare one himself, and that thereupon counsel for defendant proceeded to prove up same by bystanders." It is further stated that the bill reflects the true procedure on the trial.

There is also an affidavit by three purported bystanders to the effect that they were present on the trial and "were witnesses to the matters and facts stated in the above and foregoing bill of exceptions, and we, and each of us, do hereby depose and say that the matters and facts hereinabove stated in said bill of exceptions are properly and correctly stated therein and that the same actually occurred in the manner in which stated." It is not believed that the documents mentioned are entitled to a place in the record. The statute contemplates that the party desiring a bill of exceptions shall prepare the bill and present it to the judge and counsel for approval, and if the judge does not approve it, he is required to prepare his own bill in accord with the facts. If the bill prepared by him is unsatisfactory to the party complaining, he may controvert it by a bystanders bill. See Revised Statutes, Arts. 2066 and 2067. As a predicate for a bystanders bill, it must in all events be shown in some approved manner that the bill prepared by the complaining party has been presented to the trial judge. The proper way for this to appear is by the indorsement of the judge or by his filing his own bill in lieu of it. On proof of the failure or refusal of the judge to give any indorsement or to prepare his own bill, the complaining party, being without fault, is entitled to have the bill considered or the cause reversed. See Bell v. State, 2 Texas Crim. App. 219; Spangler v. State, 42 Texas Crim. Rep. 252; Frederickson v. State, 44 Texas Crim. Rep. 290; Branch's Ann. Tex. P. C., p. 140; Butler v. State, 64 Texas Crim. Rep., 402, 142 S. W. Rep. 904; Shaw v. State, 89 Texas Crim. Rep., 205, 229 S. W. Rep. 511; Rosa v. State, 86 Texas Crim. Rep. 646; Drawhorn v. State, 84 Texas Crim. Rep., 600, 209 S. W. 415; Kirkpatrick v. State, 85 Texas Crim. Rep. 172; Jones v. State, 89 Texas Crim. Rep. 6, 229 S. W. Rep. 865.

In the instant case, it is the contention of the appellant that he prepared and presented his bill and that the trial court refused to take any action upon it. This averment should be supported by oath. In the absence of such support, the bill cannot be considered. See Houston v. Jones, Texas 170; Knight v. State, 7 Texas Crim. App. 208; Firebaugh v. Ward, 51 Texas 409; Lanier v. Perryman, 56 Texas 108; Landrum v. State, 37 Texas Crim. Rep., 666; Exon v. State, 33 Texas Crim. Rep. 468; Thomas v. State, 83 Texas Crim. Rep. 325; Bryant v. State, 35 Texas Crim. Rep. 397; Johnson v. State, 42 Texas Crim. Rep. 301; Gillespie v. State, 85 Texas Crim. Rep. 4; Branch's Ann. Tex. P. C., Art. 216; Code of Crim. Proc.,

Art. 744; Vernon's Tex. Crim. Stat. Vol. 2, p. 554, note 33. Nothing in connection with the bills at present under consideration is found to show that they were presented to the trial judge except the unsworn statement of the attorney for the appellant. In the absence of some certificate from the judge showing that the bill was presented to him, the unsworn statement attached thereto is not sufficient to authorize its consideration, and in the absence of a bill of exceptions prepared by the trial judge, a bystander's bill is not permissible. The statute and the decisions construing them make a bystander's bill available only to controvert a bill of exceptions prepared by the trial judge. See Revised Statutes, Arts. 2066 and 2067 and authorities cited above.

Bills Nos. 17 to 29 inclusive were filed after the expiration of the time allowed by the trial judge for filing bills of exceptions. The term of court ended on the 31st day of March, and the bills last mentioned were filed on June 5th following. The time allowed for filing the bills was sixty days after adjournment, which expired on May 30th. See Code of Crim. Proc., Art. 845; Boyd v. State, 72 Texas Crim. Rep. 159; Williamsons v. State, 84 Texas Crim. Rep. 131; Benson v. State, 85 Texas Crim. Rep. 126; Bargas v. State, 86 Texas Crim. Rep. 231.

In the elaborate brief prepared by counsel for the appellant are found criticisms to the court's charge and the failure to give requested instructions. We fail to find any authenticated exception to either the court's main charge or to the refusal of requested charges filed in time to authorize its consideration. These matters are presented in some of the bills of exception filed after the expiration of the time allowed by law, but for the reasons already stated, they are not open to review. It seems that written objections were filed to the court's charge, but no exception to the failure of the court to amend the charge appears to have been reserved. Such an exception is made necessary by Arts. 735, 737, 737a, and 743 of the Code of Crim. Proc., as amended by the Acts of 1913, Chap. 138. See Vernon's Tex. Crim. Stat., p. 525, notes 61 to 64 inclusive; also Vernon's Civil & Crim. Stat., 1922 Supplement, Vol. 2, p. 2504, notes 61 to 66 inclusive. The failure to present objections to the charge or to the refusal of the special charge in accord with these statutory provisions cannot be supplied by a motion for new trial. Tamaya v. State 89 Texas Crim. Rep., 190; Vernon's Tex. Crim. Stat., Vol. 2, p. 526, note 67 and cases cited. Neither will the motion for new trial operate as a substitute for a bill of exceptions to the ruling of the court in the admission or rejection of evidence. See Spurlock v. State, 81 Texas Crim. Rep. 626; Alexander v. State, 82 Texas Crim. Rep. 431; Pritchard v. State, 82 Texas Crim. Rep. 219; Farris v. State, 85 Texas Crim. Rep. 86; Surginer v. State, 86 Texas Crim. Rep. 438; Wallace v. State, 87 Texas Crim. Rep.

527; Holloway v. State, 88 Texas Crim. Rep. 126; Vernon's Tex. Crim. Stat., Vol. 2, 534, subdivision 15 and cases cited.

These matters are mentioned for the reason that in the brief presented on behalf of the appellant, there are many references to subdivisions of the motion for new trial which are not supported by bills of exception taken at the time of the trial and preserved in accord with the statutes. Moreover, many of the averments in the motion for new trial contain matters of fact which require verification and which, in the absence of an affidavit to the motion for new trial, cannot be reviewed. Vernon's Tex. Crim. Stat., Vol. 2, p. 805, subdivision 9 and cases cited. This remark has particular application to the compaint in the motion of the alleged misconduct of the trial judge and the counsel for the State.

We discern no such weakness in the evidence as would warrant this court in overturning the verdict.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

October 10, 1923.

MORROW, Presiding Judge.—Upon the original hearing the court was obliged to ignore thirteen bills of exception because as the record then appeared, they were filed after the time allowed by law had expired. It now appears that there had been an extension of time which the clerk had neglected to embrace in the record. Because of this, a review of the record becomes necessary.

After a careful examination of certain bills of exception which were not previously considered for the reason stated, we perceive in only one of them a question of moment.

There is nothing observed in the record which rendered the court's charge subject to just criticism because of its failure to instruct the jury upon the law of ordinary theft or aggravated assault.

The bills relating to the admission of testimony, argument and other matters of practice relate to things that are not likely to occur upon another trial.

Upon the subject of accomplice testimony, the court gave this charge:

"I instruct you that the witness L. J. Mouhart, in this case, is an accomplice, and that you cannot convict the defendant upon his testimony, unless you first believe that his testimony is true, and that it connects the defendant with the offense charged in the indictment, and unless you further believe from the evidence that there is other testimony in the case corroborative of the testimony of said L. J. Mouhart,

tending to connect the defendant with the commission of the offense charged.''

Objection to it was properly urged, and a special charge in lieu of it presented and refused. The action of the court in failing to amend his charge or to read the special charge to the jury is made the subject of exception.

The paragraph of the charge quoted is like that suggested in the seduction case of Campbell v. State, 57 Texas Crim. Rep. 302. Since this case was written, this court has on several occasions indicated that the form of charge therein suggested did not accurately present the law, but owing to the state of the testimony in some cases the use of the form was not calculated to injure the accused and was therefore not reversible error, (Abbott v. State, 94 Texas Crim. Rep., 31, 250 S. W. Rep. 188; Watson v. State, 90 Texas Crim. Rep. 583), while in other cases presenting a different state of facts, it might be misleading and harmful. See Standfield v. State, 84 Texas Crim. Rep. 437; Walker v. State, 94 Texas Crim. Rep., 653, 252 S. W. Rep. 547. Where the testimony of the accomplice is so specific in giving the details of the offense as to show without question that the offense was committed through the agency of the accused, or when the other testimony is conclusive of guilt of the accused, the use of the form mentioned has been held harmless though inaccurate. See Watson v. State, supra; Abbott v. State, supra; Walker v. State, supra. In instances where the testimony of the accomplice, while criminating in its nature, does not embrace all of the elements of the offense as well as connect the accused with its commission, the form used is misleading in that it in terms tells the jury that they may convict upon the testimony of the accomplice if they believe it is *true and believe there is other corroborative testimony tending to connect the accused with the commission of the offense.* It is obvious that in many cases where the testimony of an accomplice is used, his testimony may be *true and sufficiently corroborated, but still not prove his guilt.* Illustrations emphasizing this thought will be found in the Abbott case, supra.

The special charge requested in the instant case, if given, would have informed the jury that in order to justify a conviction of appellant upon the testimony of the accomplice, it was essential that the jury believe that his testimony was true and that it *showed beyond a reasonable doubt that the accused was guilty of the offense charged.* The use of the language italicized was, in the instant case, material. Such language was used in Brown's case, 57 Texas Crim. Rep. 509, and in Oates' case, 67 Texas Crim. Rep. 496, both of which have frequently been held sufficient. See Watson v. State, 90 Texas Crim. Rep. 583. It was omitted, however, in Standfield's case, supra, in which the charge was held bad.

In the present case, while reliance is not had upon circumstantial evidence alone, the accomplice did not testify that he saw the offense committed, and the injured party was unable to say that appellant removed the diamond from his shirt bosom. The accomplice testified to circumstances putting the appellant into the position to commit the assault and the robbery. The injured party, before the time of the offense, was admittedly more or less mystified either by drugs or drinks. There are many important circumstances testified to by others than the injured party and the accomplice which were relied upon by the State as fixing the guilt upon the appellant. Randall, the injured party, in his testimony, declared that appellant assaulted him and detailed circumstances from which the jury was authorized to conclude that Randall was also robbed by the appellant. The testimony of the accomplice, however, is not conclusive to that degree that the jury finding it to be true, would necessarily convict; nor is the testimony, excluding that of the accomplice, of a character so conclusive as to dispense with the necessity of complying with appellant's request to embrace in the charge on accomplice testimony a declaration by the court informing the jury that the conviction must rest not alone upon the fact that they believed that the accomplice told the *truth*, but upon the fact that, *upon the whole case, they believed beyond a reasonable doubt that appellant committed the offense.*

The motion is granted, the affirmance set aside, the judgment reversed and the cause remanded.

*Reversed and remanded.*