LILLIAN DEWEES, ALIAS JANE E. DEWEES, AND EARL PLEASANT
v. THE STATE.

No. 14893: Delivered March 9, 1932.

The opinion states the case.

*R. G. Robertson,* of Port Arthur, for appellants.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, theft of cattle; the punishment, two years in the penitentiary.

The indictment in this case charged the appellants, Lillian Dewees, alias Jane E. Dewees, and Earl Pleasant, together with Hiram Dewees, with the theft of one head of cattle belonging to a man by the name of McFaddin.

Hiram Dewees filed an application for a severance and the defendants having failed to agree on the order in which they should be tried, the court directed that the defendants, Lillian Dewees and Earl Pleasant, should be tried first. The appellants contend that the evidence is insufficient to corroborate the evidence of the accomplice.

The testimony of the said accomplice in brief was as follows: That he was 15 years of age and lived in Port Acres; that he knew the appellants, Lillian Dewees and Earl Pleasant; that the said Lillian Dewees was his aunt; that about the 6th day of February he was down at the house

of appellants; that they lived together; that while he was there the two appellants left the house that evening and said that they were going to the beach to get a calf and when they came back they had a calf; they were gone about an hour and a half or two hours and went in a Dodge coupe, and upon their return they had the calf in the back end of the coupe; the calf looked about a year old and he thought it was a steer; that it was shot when they brought it back; that they hung it up in the garage and skinned it there and he helped them; they asked him to do so and when they got through skinning the calf they quartered it and hung the meat up; that he and the appellant Earl Pleasant took the hide to the bayou and threw it in; that it was in a sack; that they threw the head out on the prairie out there from the house; that he saw the brand on the calf and it was a mashed O; that he knew whose brand it was, it was Perry McFaddin's; that he had seen the hide since it was thrown in the bayou, it was at Tom Parrish's when he saw it again; it was the same hide that came off the calf that they threw in the bayou. He also testified that the appellant Earl Pleasant told him it was a stolen calf and that he got it from the beach; that he knew when he was helping to skin the calf and butcher it that it was McFaddin's brand. He further testified that the appellant Earl Pleasant and his little boy threw the head out in the prairie. He testi,ed that the next day he and his father were arrested and put in jail. The first officer he talked to about this occurrence was Bill Richardson and that was at the jail annex; that he was locked up there then and he told Richardson about it because he knew it was the truth and he had to tell him; that the officer told him to come on and tell the truth about it and that he might have also told him that if he didn't come clean and tell this story they would put him in the reformatory; he couldn't say whether the officer told him that or not; that he did tell him he could send him to the reform school if he didn't tell it right and if he didn't tell him right he would do it; that he didn't want to tell it because of the fact that he had heard the appellant Earl Pleasant throw out hints that the first fellow ever told anything on him he was going to bump him off and that was the reason why he didn't tell it; the reason he finally told it was that he found out that he couldn't bother him about it.

W. P. H. McFaddin, Jr., testified that he lived in Beaumont; that he was in the cattle business; that he had some cattle on the beach on February 6th and on or about that date he found out that he had lost a calf; it was about 6 months old, weighing about 350 pounds; that he didn't give either of the appellants authority to take that calf or appropriate it for their own use or benefit; that the first he knew about it, Tom Parrish called him and said he had a hide and thought it came from one of the witness's cows; that he examined it and it was his hide.

Mose Andrews, a witness for the state, testified that on or about February 6, together with a Mr. Hutchins, he was pulling out some boats;

that there was a dog there that he noticed and the dog was pulling at a sack in the water and Hutchins pulled it out and it was discovered to be a hide; that he turned the hide over to Mr. Tom Parrish who said it belonged to McFaddin and it had a mashed O brand; that he had no idea who put the hide in the bayou, didn't know it was there until Hutchins pulled it out; that he just happened to be there at the time.

The only other evidence the state offered in corroboration of the accomplice was that of a deputy sheriff to the effect that he went to Port Acres and searched the appellant Earl Pleasant's house and found some soup bones cooked and some veal chops on the stove and on the back of the stove he found three big pieces of tallow; that he also found in appellant's garage about fifteen or twenty pounds of beef which was partly dried and had been smoked; that on the floor of the garage, after kicking back some cold cinders, he found some clotted blood and several patches of white hair and he saw some fresh signs of something having been hung on the rafters. He further testified that the accomplice took him out on the prairie and showed him a muley calf's head and it had a hole on the side of the skull.

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed. The corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the accused with its commission. Article 718, C. C. P.; Durham v. State, 106 Texas Crim. Rep., 85, 290 S. W., 1092; Freeman v. State, 118 Texas Crim. Rep., 102, 40 S. W. (2d) 105.

The testimony of the accomplice apparently makes out a clear case of theft against appellant, but being an accomplice the law requires that he should be corroborated before the jury is authorized to convict. As we view the testimony, no witness in this case except the accomplice swears to a fact tending to incriminate the appellants with the theft of the cattle. No witness except the accomplice testified that the appellants or either of them were ever in possession of the calf or of the hide or head of the animal alleged to have been stolen. We are unable to reach the conclusion that the proof of the fact that the appellants were in possession of some meat, under the conditions reflected by the record, was such evidence of an incriminating character which tended to connect the appellants with the commission of the specific offense charged in the indictment.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.