**Frankie O'DONALD, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 45938.**

Court of Criminal Appeals of Texas.

April 4, 1973.

---

George S. McCarthy, Charles W. Fairweather, Robert Carnahan, Amarillo, for appellant.

George E. Dowlen, Canyon, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

The conviction is for felony theft; the punishment six years imprisonment.

The appellant was charged with the theft of "grain sorghum" from Bruce Lusk, the manager of the Randall County Feed Yard.

The appellant urges that the evidence will not sustain the conviction because it is based upon the testimony of an accomplice witness which is not sufficiently corroborated.

Article 38.14, Vernon's Ann.C.C.P. provides:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

The State readily admits that the witness Hudgins who testified he participated in the alleged theft of the grain is an accomplice as a matter of law.

The well known test for determining the evidence required to support a conviction in addition to the testimony of an accomplice witness has recently been stated in Colunga v. State, 481 S.W.2d 866 (Tex. Cr.App.1972) in the following language:

"The test of the sufficiency of such corroboration is to eliminate the evidence of the accomplice from consideration and then to examine the evidence of other witnesses to determine if there is inculpatory evidence, evidence of an incriminating nature which tends to con-nect the accused with the commission of the offense. Merely showing an offense occurred is not sufficient. Odom v. State, Tex.Cr.App., 438 S.W.2d 912; Edwards v. State, Tex.Cr.App., 427 S.W.2d 629. The corroborative testimony need not supply direct evidence; it must only tend to connect appellant with the crime. Cherb v. State, Tex.Cr.App., 472 S.W.2d 273. It is the combined cumulative weight of the evidence furnished by non-accomplice witnesses which supplies the test. Minor v. State, 108 Tex.Cr.R. 1, 299 S.W. 422."

See also Bolding v. State, 493 S.W.2d 186 (Tex.Cr.App.1973); Reynolds v. State, 489 S.W.2d 866 (Tex.Cr.App.1972); Windham v. State, 479 S.W.2d 319 (Tex.Cr.App. 1972); Chapman v. State, 470 S.W.2d 656 (Tex.Cr.App.1971); Minton v. State, 468 S.W.2d 426 (Tex.Cr.App.1971); Odom v. State, 438 S.W.2d 912 (Tex.Cr.App.1969) and Edwards v. State, 427 S.W.2d 629 (Tex.Cr.App.1968).

The corroborative evidence is not sufficient merely because there is other evidence which coincides with numerous details of the accomplice witness' testimony unless that corroborative evidence tends to connect the defendant with the offense charged.

Let us now consider the evidence other than that of the accomplice witness to determine if it tends to connect the appellant with the offense alleged.

Bruce Lusk, the manager of the Randall County Feed Yard and the complainant named in the indictment, testified to the following facts. Between sixty-five thousand and sixty-nine thousand head of cattle are kept on feed at the Randall County Feed Yard. Approximately one million pounds of feed are used each day and there is a storage capacity for approximately five million pounds. The basic ingredient of the ration fed is grain sorghum. To make the feed more palatable moisture in the form of steam is added to

the feed. This also increases its volume and weight. The feed is stored in different types of bins where the equipment will handle one hundred thousand pounds of grain in twenty-five minutes. A truck can be loaded or unloaded in twenty minutes. Some knowledge of the use of the equipment and a key is necessary for the loading and unloading of the grain.

Lusk identified the appellant as a former employee of the feed yard. The appellant was employed at the time of the alleged theft but was not scheduled for duty on the night that the theft was alleged to have occurred. The appellant was not entrusted with a key necessary to move the grain loading equipment. Lusk explained that because of the large quantity of feed handled, the adding of moisture, and other factors, it was difficult to determine if losses were sustained. He said that he could not prove by an inventory the loss of any grain. Under cross-examination he testified, "In this instance I do not know that any grain was taken." Lusk did not report the theft of any grain to law enforcement personnel, but a deputy sheriff had suggested to him that he might be missing some grain. If grain was taken, Lusk did not give his consent to the appellant nor anyone else for the taking of the grain.

Robert Caldwell, who on December 2, 1970, was the manager of the "Consumers Fuel Association," a grain elevator in Canyon, testified that when he came to work that morning there was a "Ryder" truck loaded with grain at the elevator. Soon after Caldwell arrived the appellant came to the office. He was accompanied by two other men, one of whom the witness later heard introduced as Hubert Wiley. Caldwell purchased the seventy-five thousand pound load of grain for fifteen hundred dollars. A check payable to the appellant was issued. The check which had been paid was introduced into evidence. Cald-

well did not ask the appellant where he got the grain.

Lew Wixom shop foreman and "lease man" for the Ryder Truck Rental Agency in Amarillo, rented a truck (tractor-trailer combination) to the appellant on December 1, 1970. Dave Hindon, a transient rental clerk for the same rental agency in Amarillo, testified the truck was returned by the appellant on December 2, 1970. A copy of the rental contract was introduced into evidence. The time stamped on the contract reflected that the appellant received the truck at 11:24 p. m., December 1, and returned it at 9:09 a. m., December 2, 1970. The truck had been driven sixty miles.

Roy Tinsley, a deputy sheriff of Randall County, testified he saw the appellant O'Donald, Hubert Wiley and Mack Hudgins in the offices of the "Consumers Elevator" on the morning of December 2, 1970.[1] Tinsley engaged in conversation with the appellant who told the deputy he was selling a load of grain that had come from his farm. The officer who witnessed the grain being unloaded said he didn't know where the grain came from but testified that it did not come from the appellant's farm because "it was too much and this was a nice bright type of maize," not of the type raised on the appellant's farm.

L. S. Johnston, the sheriff of Randall County, testified he traced a certain route from the Ryder Truck Rental Agency in Amarillo to the Randall County Feed Yard, the Consumers Elevator, and back to the truck rental agency and found it to be sixty-one and four tenths miles.

Now we will consider the testimony of the accomplice witness Hudgins. It was as follows: He had been employed at the Randall County Feed Yard for approximately twenty months. At the time he went to work at the feed yard he met the appellant who was already employed there. Hudgins acknowledged his participation in thefts of grain from the company, but said

1. Hudgins testified he stayed in the pickup truck that morning and did not go into the office.

he had not been charged with these thefts, and was still employed there at the time of trial.

Hudgins related that in the late evening of December 1, 1970, he, along with the appellant and their wives, drove to the Ryder Truck Rental Agency in Amarillo. Their wives returned to Canyon in the automobile. The appellant rented a truck and accompanied by Hudgins drove to the Randall County Feed Yard. Although several families lived on the premises and two employees were assigned to duty at night, Hudgins said he saw no one at the feed yard. They loaded the truck with "grain" and drove the truck to the "Canyon Elevator Co-op." The next morning Hudgins, Wiley and the appellant went to the elevator where the grain was sold.[2]

The appellant offered no evidence in his defense at the guilt-innocence stage of the trial and he testified only at the punishment phase of the trial.[3]

█ In this case the evidence corroborates the details of the renting of the truck and the selling of a load of grain, but *no evidence outside of the accomplice witness' testimony shows that any grain was taken or tends to connect the appellant with the taking of grain,* if it was taken, from the bins of the Randall County Feed Yard.

The State has argued that because many of the details of the accomplice witness' testimony are corroborated, it is evidence of the fact that he was telling the truth concerning the taking of the grain. Even though this may be a reasonable argument it does not meet the statutory requirement that the corroborating evidence tends to connect the appellant with the offense; that is, the taking of the grain.

█ Each case must be considered on its own facts as to whether an accomplice witness has been corroborated by facts and circumstances tending to connect the defendant with the offense alleged. However, guidance may be had from comparisons with other fact situations. Differences can be found in the facts of each case, but a fair comparison of the facts in the cases which follow will show that in each of the cases corroborative evidence of the accomplice witness was stronger than in this case; yet a reversal resulted because the evidence was not sufficient to meet the statutory requirement. Fraley v. State, 93 Tex.Cr.R. 648, 249 S.W. 866 (1923); Dewees v. State, 120 Tex.Cr.R. 595, 47 S.W.2d 277 (1932); Brown v. State, 167 Tex.Cr.R. 352, 320 S.W.2d 845 (1959); Nolley v. State, 368 S.W.2d 218 (Tex.Cr. App.1963) and McCarty v. State, 144 Tex. Cr.R. 408, 163 S.W.2d 200 (1942).

It is granted the unique facts of this case make it difficult to prosecute because the complainant is unable to testify to 'the loss of any grain, but see and compare Nisbet v. State, 170 Tex.Cr.R. 1, 336 S.W. 2d 142 (1959).

The appellant's remaining contention that the offense, if any, is embezzlement rather than theft is without merit. For a full discussion of the same contention made in the companion case, see Wiley v. State, 486 S.W.2d 769 (Tex.Cr.App.1972).

For the reasons stated, the judgment is reversed and the cause remanded.

Opinion approved by the Court.

ROBERTS, Judge (concurring).

I concur in the result reached by the majority but I would reverse on the sufficien-

2. Hudgins also testified without objection that he and the appellant stole a load of "milo sorghumgrain" from the Randall County Feed Yard on November 28, 1970, and sold it to the Umbarger Elevator.

3. In his testimony concerning whether or not he could make restitution if granted probation, the appellant admitted stealing twelve thousand dollars worth of grain from the Randall County Feed Yard. He did not testify, however, that he stole the grain soghum for which he was on trial.

cy of the evidence. Lusk, the manager of the feed yard, did not and could not testify that any grain was stolen.

It is elementary that in a prosecution for theft, there must be a showing that the injured party was in fact deprived of the thing alleged to have been stolen. By statute, a fraudulent taking must be shown. Article 1410, Vernon's Ann.P.C.; cf., Ballinger v. State, 481 S.W.2d 421 (Tex.Crim. App.1972); Martin v. State, 95 Tex.Cr.R. 401, 254 S.W. 971 (1923).