Donald Gene MIXON, Appellant,

v.

The STATE of Texas, Appellee.

No. 46937.

Court of Criminal Appeals of Texas.

Feb. 6, 1974.

On Rehearing March 27, 1974.

Byron B. Chappell, John R. McFall, Lubbock, for appellant.

Andy Shuval, Dist. Atty., Hereford, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

The conviction is for theft of grain over the value of $50.00. The punishment was assessed by the jury at ten years, probated.

The sufficiency of the evidence is challenged.

Appellant was convicted of the theft of 100,000 pounds of milo from Joe Artho, general manager of the Hereford Grain Corporation. The grain was alleged to have been taken from Hereford Grain's Farmers' Corner elevator in the early morning of December 30, 1970.

The State relies in part on the testimony of Wayne Richard Vaughn, an accomplice witness. Appellant contends that the evidence is insufficient to corroborate his testimony.

Vaughn testified to the following facts: On December 29, 1970, appellant offered Vaughn and Chip Stewart a job to make some extra money. Appellant gave Vaughn the keys to a grain truck owned by Robert Hughes, and Stewart the keys to appellant's grain truck, and directed them to drive the trucks to Big Daddy's Truck Stop in Hereford later that evening. Vaughn and Stewart were met at the truck stop by appellant and Hughes at 12:30 a. m. At 2:30 a. m., appellant directed the two men to follow appellant and Hughes to a point some seven to eight miles north of Hereford on Highway 385. At appellant's direction, Vaughn waited in his truck while the other three drove off in a northerly direction on Highway 385 in the other truck and Hughes' pickup. The three returned within twenty minutes with the truck fully loaded with grain. While Vaughn and Stewart attempted to put a tarpaulin on the first truck, appellant drove off in the second truck in the same direction. Within another twenty minutes, the second fully loaded truck returned. After shoveling several hundred pounds of grain which had fallen onto the highway into Hughes' pickup, Stewart and Vaughn were told to return to Littlefield.

At the city limits of Hereford, the two trucks were stopped by the police. After covering both trucks completely at police directions and submitting to an examination of their drivers' licenses, the two continued on to appellant's trucking stop in Littlefield, where they arrived at approximately 5:30 a. m.

While waiting for Hughes and appellant to return, Stewart told Vaughn that he was afraid they were late because "they might have got caught over at the eleva-

tor." Appellant and Hughes finally arrived at 7:30 a. m. in the pickup. Later, appellant told Stewart to take his truck to Sudan and unload it. When Stewart returned, he and a farm hand of appellant's father drove the second truck to Sudan, unloaded it, and Stewart picked up the check made out to appellant in payment for the two loads of grain.

The following facts were established by witnesses other than the accomplice witness: (1) that the Farmers' Corner elevator is located approximately sixteen miles north of Hereford on Highway 385 and that some 180,000 pounds of milo was stolen from the elevator sometime between December 10 and the end of January; (2) that appellant was placed in Hereford within two hours of the time the loaded trucks were stopped by Hereford police officers; (3) that at least one of the two trucks belonged to appellant, that the trucks were driven by the accomplice witness Vaughn and Chip Stewart, and that they were spilling grain over the highway because neither was fully covered; (4) that appellant sold two truckloads of milo to Feeder Grains in Sudan within six hours after the alleged theft from the elevator and that the grain was delivered by Chip Stewart and another man in separate trucks within nine hours of the theft; (5) that on the day following the theft appellant called a Deaf Smith County deputy sheriff and learned that his trucks had been seen the previous night on Highway 385, that they were spilling grain on the ground, and that he was suspected of having stolen the grain; and (6) that on the same day appellant called a Logan, New Mexico, farmer and offered to buy some grain, but, when appellant arrived in Logan four days later, he bought no grain and instead attempted to obtain some false grain receipts.

Article 38.14, Vernon's Ann.C.C.P., provides, in part:

"A conviction cannot be had upon the testimony of an accomplice unless cor-

roborated by other evidence tending to connect the defendant with the offense committed; . . ."

This Court recently wrote in O'Donald v. State, 492 S.W.2d 584, 585:

" 'The test of the sufficiency of such corroboration is to eliminate the evidence of the accomplice from consideration and then to examine the evidence of other witnesses to determine if there is inculpatory evidence, evidence of an incriminating nature which tends to connect the accused with the commission of the offense. Merely showing an offense occurred is not sufficient. Odom v. State, Tex.Cr.App., 438 S.W.2d 912; Edwards v. State, Tex.Cr.App., 427 S.W.2d 629. The corroborative testimony need not supply direct evidence; it must only tend to connect appellant with the crime. Cherb v. State, Tex.Cr.App., 472 S.W.2d 273. It is the combined cumulative weight of the evidence furnished by non-accomplice witnesses which supplies the test. Minor v. State, 108 Tex.Cr.R. 1, 299 S.W. 422.' "

Appellant relies upon O'Donald, but the case is not in point. There, the Court found that "no evidence outside of the accomplice witness' testimony shows that any grain was taken or tends to connect the appellant with the taking of grain, if it was taken, . . ." Id., 492 S.W.2d at 587. Such is not the case here. The evidence is sufficient to show both the theft of the grain and to connect the appellant with taking it. We, therefore, hold that the record in the instant case, taken as a whole, is sufficient to corroborate the accomplice witness and to support the conviction.

Finding no reversible error, the judgment is affirmed.

ONION, Presiding Judge (dissenting).

I cannot agree that the evidence is sufficient to sustain the jury's verdict.

The indictment charged the theft of "over 100,000 lbs. of milo grain valued at One Dollar and Fifty Cents ($1.50) per hundred weight . . ." from Joe Artho "on or about the 30th day of December A. D., 1970."

Artho, General Manager of the Hereford Grain Corporation, testified such organization had three locations for storing grain in Deaf Smith County, one being 15 miles north of Hereford on Highway 385 known as the Farmers' Corner elevator. He related that there were approximately 400,000 pounds of milo grain stored there on December 10, 1970, and that from that time until near the end of January, 1971, no grain was sold or given away, and that he had not given the appellant or his co-defendant Stewart permission to take any grain from the elevator. He related the grain was "worth at least $1.50 a hundred-weight" it being his opinion that it was worth $2.18 a hundredweight.

Mark Koenig testified he was manager of the said Farmers' Corner elevator 16 miles north of Hereford and that on December 10, 1970, all the milo grain there was placed in one bin, it being approximately 400,000 pounds. He related that none of the grain was sold or removed, nor was additional grain received. Near the end of January, 1971, he discovered approximately 180,000 pounds were missing when the bin was emptied. He recounted that between 11 a. m. and 12 p. m. on December 30, 1970, he had been asked by a deputy sheriff if he was missing any grain, and by throwing rocks against the side of the building to determine the grain level, he had not been able to detect that any grain was missing, though he acknowledged this was not an accurate method of measurement. He also testified that as far as he knew all of the grain was there that morning.

Neither witness was able to testify just when the milo grain had been taken, nor was there any testimony as to just how the grain may have been taken.

Wayne Richard Vaughn, the accomplice witness who had been granted immunity, testified that Robert Hughes and the appellant asked him and Chip Stewart on December 29, 1970, if they wanted to make some money and instructed them to bring two trucks to Big Daddy's Truck Stop just outside of Hereford. Keys to the truck owned by Hughes and to a truck owned by the appellant were given to Stewart and Vaughn. Hughes and the appellant met Vaughn and Stewart at the said truck stop at 12:30 a. m. on December 30, 1970. They were told to sleep in the trucks until they were awakened. At 2:30 a. m. Vaughn related they were awakened and directed by appellant to follow him and Hughes to a point some seven or eight miles north of Hereford on Highway 385 "Approximately one mile north of this first little elevator out here on the left." Vaughn then waited in the truck he was driving while the appellant and Stewart in the other truck and Hughes in his pickup drove off in a northerly direction on Highway 385. Within approximately "15 to 20 minutes" appellant returned with the truck fully loaded with grain. A tarpaulin was placed on this truck and appellant, according to Vaughn, drove off in the empty truck in a northerly direction and returned in "about 15 or 20 minutes" with a truck full of milo grain. Vaughn estimated that each truck contained 60,000 pounds of grain, or a total of 120,000 pounds. It was then discovered the first truck had developed a leak in the tailgate and there were approximately six to eight hundred pounds of grain on the road. Next, this grain was loaded into Hughes' pickup. Vaughn related he and Stewart were instructed "to go home to Littlefield" and they drove south on Highway 385, but were stopped a mile out of Hereford by the police and told to "tarp" one of the trucks which was uncovered and was scattering grain on the highway. After "tarping" the truck, they drove to the appellant's trucking stop in Littlefield, arriving about 5:30 a. m. While awaiting the arrival of appellant and Hughes, Stewart expressed the thought the

delay was because "they might have got caught over at the elevator." At about 7:30 a. m. appellant and Hughes arrived in the pickup and appellant instructed Stewart to go to Sudan and unload his truck at the Sudan Livestock and instructed Vaughn to go to the farm of appellant's father in Amherst and unload the pickup and pick up a hired hand. Vaughn did this and returned. While it is not clear from the evidence what transpired next, it appears Vaughn went back to the farm in question and picked up Stewart and subsequently, in Vaughn's presence, Stewart was instructed to take the second truck to Sudan Livestock. Vaughn also related that he heard the appellant say he had to call the Sheriff's office in Hereford as he "had some explaining he had to do to them to get it all straightened out, . . ."

On cross-examination Vaughn admitted his first written statement given to a deputy on January 19, 1971, did not implicate the appellant in taking part in the nighttime activities.

Calvin Robinson testified that on December 30, 1970, he was a patrolman for the City of Hereford and that he stopped Stewart and Vaughn in the early morning hours and told them to "tarp" one of the trucks. Dwayne Wiley testified that at about 2 a. m. on December 30, 1970, he had sold the appellant a tire at the Big Daddy's Truck Stop and that the appellant had used a Shamrock credit card for the purchase. Alan Babcock, Assistant Retail Credit Manager for Diamond Shamrock Oil and Gas Corportion at Amarillo, testified he had such a credit slip, but it bore the date December 29, 1970, with the time of the purchase not being listed.

Marvin Tollett, Manager of Feeder Grain at Sudan, testified he talked to the appellant, whom he had known for 10 or 15 years, over the telephone about 9 a. m. on December 30, 1970, and that the appellant asked if he wanted to buy some grain. Tollett agreed and on that date two loads of milo grain were delivered and a check for $3,374.70 was made out to the appellant. Tollett testified that he had bought grain "down town through the years from him" (appellant).

Fred Broom, a farmer from Logan, New Mexico, testified that appellant called him on December 30 and asked about the purchase of some grain. He related the appellant came to Logan on January 3, 1971, and inquired if Broom had any grain receipt tickets, as he (the appellant) had been hauling lard without a permit, and stated if he had grain receipts he could prove he wasn't hauling lard. When Broom informed him the Sheriff from Hereford had called to determine if Broom had sold any grain to the appellant and that he shouldn't give the appellant any grain receipt tickets, the appellant then stated he didn't need any tickets if the Sheriff was not interested in the lard hauling.

Harold Wheeler, who was a deputy sheriff on December 30, 1970, testified that on that date appellant called him and asked what the "deal" was as a police car had been to his place of business. Wheeler informed the appellant that he believed some grain had been stolen, that the Sheriff's office "was checking to see where it come from and what the deal was on it." The appellant was informed his trucks had been seen "a half mile north of the Pitman Elevator on 385 on the Vega Highway, and lots of grain was on the ground, . . . ."

Appellant offered no testimony.

The court charged on the law of circumstantial evidence.

Article 38.14, Vernon's Ann.C.C.P., provides:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; *and the corroboration is not sufficient if it merely shows the commission of the offense.*" (emphasis supplied)

In Edwards v. State, 427 S.W.2d 629, 632 (Tex.Cr.App.1968), this court wrote:

"The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be *inculpatory evidence* that is *evidence of incriminating character which tends to connect the defendant with the commission of the offense.* If there is such evidence, the corroboration is sufficient; otherwise, it is not. Dalrymple v. State, Tex.Cr.App., 366 S.W.2d 576; Bradford v. State, 170 Tex.Cr.R. 530, 342 S.W.2d 319." (emphasis supplied)

Therefore, it is clear that evidence, independent of the accomplice witness' testimony which merely shows the commission of the offense, or which, although corroborative in some respects of the accomplice witness' version, is not of incriminating character tending to connect the accused with the crime, is insufficient to sustain a conviction. See Umsted v. State, 435 S.W.2d 156 (Tex.Cr.App.1968); Odneal v. State, 117 Tex.Cr.R. 97, 34 S.W.2d 595 (1931).

In turning to the accomplice witness' testimony it is observed that such testimony does not make out a complete case against the appellant. Therefore it is necessary that accomplice testimony connect the appellant with the offense charged, but that there be other testimony in the case corroborative of the accomplice's testimony tending to connect the appellant with the offense charged, and that corroboration is not sufficient if it merely shows the commission of the offense, but tends to connect the appellant with its commission, and then from all the evidence the appellant must be shown to be guilty beyond a reasonable doubt. See Oates v. State, 67 Tex.Cr.R. 488, 149 S.W. 1194, 1198 (1912). See also Smith v. State, 140 Tex.Cr.R. 301, 144 S.W.2d 894 (1940); Quinn v. State, 136 Tex.Cr.R. 131, 123 S.W.2d 890 (1938);

Anderson v. State, 95 Tex.Cr.R. 346, 254 S.W. 986 (1923).

The accomplice witness placed the appellant within seven or eight miles of the place of the alleged theft, but such witness did not place the appellant at the scene nor did he identify the source of the milo grain involved, and it does not appear he knew. Further, it does not appear that the accomplice witness knew or suspected the grain may have been stolen until later.

The evidence merely showing the commission of the charged offense is not sufficient to corroborate the accomplice witness. See Article 38.14, Vernon's Ann.C. C.P. Further, neither the complaining witness nor anyone else knew just when the missing milo grain was taken between December 10, 1970 and the "end of January," 1971. In fact, a check of the bin on December 30, 1970, supposedly after the alleged theft, did not reveal that any grain was missing at that time even though the 180,000 pounds later claimed to be missing would be almost one-half of the 400,000 pounds of grain supposedly stored there.

There was testimony that appellant purchased a tire at 2 a. m. in Hereford on December 30, though the credit slip reflected the date of December 29. This corroborated the accomplice witness' testimony as to the fact appellant was in Hereford in the early morning hours, but such testimony did not place appellant in the company of the accomplice witness and was not of incriminating character tending to connect the accused with the crime.

Officer Robinson corroborated the accomplice witness' testimony as to the fact that he and Stewart were driving loaded grain trucks in the early morning hours of December 30 near Hereford. However, his testimony did not reflect appellant was present or that he made an identification of the trucks, etc., and is not of an incriminating character tending to connect the accused with the crime.

Tollett admitted he purchased two truck loads of milo grain from the appellant on

the morning of December 30, 1970, but he related that he frequently bought grain from the appellant. While the grain was milo, where was nothing to identify the source of the grain and no showing that it was the only grain reported missing during the alleged time period in that area.

The most damaging testimony was the action of the appellant in attempting to obtain the grain receipt tickets from the dealer in Logan. However, such action did not tie appellant to the offense charged as distinguished from another offense or a mere fraudulent predisposition.

Since the testimony of the accomplice witness falls short of making out a complete case against the appellant, the case was not removed from the rule of the law of circumstantial evidence.

"In criminal cases, the guilt of the accused must be proved beyond a reasonable doubt. In other words, a conviction in a criminal case cannot be sustained if the evidence leaves any reasonable doubt as to guilt of the accused.

"No exact rule exists for determining in each case what constitutes reasonable doubt. On the contrary, what constitutes reasonable doubt in a particular case must necessarily be determined by the facts of the case. To sustain a conviction, however, two things are essential. First, it must be shown that the offense charged was actually committed. Second, there must also be proof, of a degree of certainty greater than a mere possibility or strong suspicion, that tends to show that the accused was the person who either committed the crime or else participated in its commission." 24 Tex.Jur.2d, Evidence, Sec. 724, p. 393.

"In criminal cases, a conviction may properly be had on circumstantial evidence alone. Indeed, circumstantial evidence is frequently just as convincing in a criminal case as direct evidence. To sustain a conviction on circumstantial evidence, however, the basic facts from which it is sought to infer the ultimate

fact of guilt must be proved beyond a reasonable doubt by direct evidence. The basic facts must also be consistent not only with each other, but also with the ultimate fact of guilt sought to be inferred from the basic facts. In short, the circumstances relied on, when considered as a whole, must be of a conclusive nature; they must lead to a satisfactory conclusion that the accused is guilty and exclude all other reasonable hypotheses except guilt. They must produce, in net effect, a reasonable and moral certainty that the accused and no other person committed the offense charged." 24 Tex.Jur.2d, Evidence, Sec. 729, p. 403.

"In criminal cases, a judgment of conviction, to be sustained on appeal, must be supported by evidence that produces a moral certainty of the guilt of the accused to the exclusion of every reasonable doubt. The evidence will be insufficient to sustain the conviction where, although not leaving the accused free from suspicion of guilt, it still fails to show his guilt to a moral certainty, so as to exclude all reasonable doubt.

"In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review the evidence in light of the presumption that the accused is innocent. The Court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged." 24 Tex. Jur.2d, Evidence, Sec. 742, p. 422.

The complaining witness Artho and the manager of the elevator in question testified that 180,000 pounds of milo grain were taken from a bin sometime between December 10, 1970 and the end of January, 1971. They did not know when it was taken or who took it. A check of the bin by throwing rocks against the bin on Decem-

ber 30 to determine if any grain was missing was negative even though 180,000 pounds would have been nearly one-half of the 400,000 pounds stored in the bin.

On December 30, the appellant sold two truck loads of milo grain to one Tollett, the two truck loads being estimated as 120,000 pounds by the witness Vaughn. While the grain was shown to be milo, there was no other identification of such grain as the grain stolen. Where the evidence is circumstantial, it must measure up to the standard which the law requires of circumstantial evidence generally. Scoggins v. State, 92 Tex.Cr.R. 424, 244 S.W. 535 (1922); 55 Tex.Jur.2d, Theft, Sec. 187, p. 449.

It is noted that it was shown that appellant frequently sold grain to Tollett.

Vaughn placed the appellant out on the Highway 385 in the early morning hours of December 30 about seven or eight miles from the elevator in question, but contended his trips which resulted in obtaining full loads of grain took only 15 or 20 minutes each. The appellant would have had to drive seven or eight miles, fill the truck and drive seven or eight miles back within that time period. The witness' testimony never placed him at or near the place of the alleged theft, and the evidence showed other elevators in the vicinity and no evidence negating other thefts in the area or any showing that the appellant had not obtained any grain from any other source.

When the rule relating to the corroboration of an accomplice witness is considered in the light of the law of circumstantial evidence, I cannot agree the evidence is sufficient.

For the reasons stated, I dissent.

ROBERTS, J., joins in this dissent.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ODOM, Judge.

Upon appellant's motion for rehearing we have re-examined the record, and have reached the conclusion that the evidence is insufficient to support the conviction. This we do without resort to the accomplice witness rule (Art. 38.14, Vernon's Ann.C.C.P.), but upon consideration of the entire record including the testimony of the accomplice witness. Thus, our decision is not based upon the principles relied upon in O'Donald v. State, Tex.Cr.App., 492 S. W.2d 584, wherein reversal rested on the accomplice witness rule.

The indictment charges that appellant did:

"Unlawfully and fraudulently take over 100,000 lbs. of milo grain valued at One Dollar and Fifty Cents ($1.50) per hundred weight and of the value of over $50.00 the same then and there being the corporeal personal property of and belonging to Joe Artho . . . from the possession of [Joe Artho], without the consent of [Joe Artho] and with the intent then and there to deprive [Joe Artho] of the value of the same, and to appropriate it to the use of and benefit of the said defendant."

From the evidence it would be possible for a jury reasonably to deduce that appellant stole grain from somewhere north of Hereford on December 30, 1970, and also to deduce that grain was stolen by someone from Joe Artho at the Farmer's Corner elevator 15 miles north of Hereford sometime between December 10, 1970, and the end of January 1971. The evidence, however, does not show that appellant committed the theft charged in the indictment; i. e., that he took the grain stolen from Joe Artho.

The evidence does not show that the grain stolen from the Farmer's Corner elevator was stolen December 30, 1970. Such a circumstance well could have been sufficient to show the theft charged was committed by appellant. Neither does the evidence show that appellant went to the Farmer's Corner elevator on December 30, 1970. The evidence places appellant within seven to eight miles from the Farmer's Corner elevator on the night of the theft,

but this is too insufficient a circumstance to connect appellant to the charged offense in view of the additional facts that there were shown to be other grain elevators in the vicinity and it was not shown that no grain was stolen from the other elevators.

The closest connection made by the evidence between appellant and the theft of grain from Joe Artho is that on one night, during the period during which Artho's grain was stolen, appellant stole grain from somewhere in the general vicinity, operating from a position seven or eight miles south of the location of the charged theft. We find this distance, absent other connecting circumstances, is insufficient to support appellant's conviction for the charged theft.

Appellant's motion for rehearing is granted. The judgment of affirmance is set aside, and the judgment is reversed and the cause remanded.

DOUGLAS, J., dissents for the reasons set out in the opinion on original submission.